# CHARLESTON

## STATE v. TRAIL.

Submitted January 30, 1906.    Decided February 27, 1906.

1   HOMICIDE—*Evidence—Declaration of Decedent.*
    In a trial for murder, the uncommunicated declaration of the deceased of his purpose to have illicit intercourse with the daughter of the defendant, which he declared he could do "if he could get the old man drunk," is not admissible in evidence.  (p. 177.)

2.   SAME—*Defenses—Burden of Proof.*
    In the trial of an indictment for murder, if the homicide is proven to have been committed by the defendant then the presumption of murder in the second degree arises against the defendant and the burden of proof rests upon him to make such defense as will reduce the crime below such degree, or as will justify the act, and such defense may be found in the evidence adduced by the state and that of the defendant and all the circumstances of the case.  (p. 179.)

3.   WITNESSES—*Credibility—Instructions.*
    Where a witness in a trial of a case makes statements in material matters touching the issue inconsistent with former statements made by him concerning the same matters, the party against whom such witness testifies is entitled to have the jury instructed that if they believe from the evidence in the case that the witness made inconsistent and contrary statements concerning such matters, then the jury has the right to disregard the whole testimony of such witness, or give it such weight as to which they think it is entitled.  (p. 183.)

4.   CRIMINAL LAW—*Circumstantial Evidence.*
    Syllabus, points 3, 4 and 5, *State* v. *Flanagan,* 26 W. Va. 116, approved and applied.  (p. 184.)

Error to Circuit Court, Putnam County.

Thomas C. Trail was convicted of murder and brings error.

*Reversed.*

J. L. STEVENS, JOHN L. WHITTEN, A. P. FARLEY, and CHAS. E. HOGG, for plaintiff in error.

C. W. MAY, Attorney General, for the State.

MCWHORTER, PRESIDENT:

Thomas C. Trail was indicted in the circuit court of Putnam county for the murder of Peter Bowles and convicted of

murder in the second degree and sentenced to the penitentiary for the period of six years.

Upon the trial defendant by counsel took five bills of exceptions numbered 1 to 5 respectively. Bill of exceptions No. 1 includes all the evidence taken in the case; No. 2 calls in question the instructions given for the State; No. 3 goes to the refusal of the instructions offered by the defendant; and No. 4, which is made the subject of the first assignment of error in the petition for writ of error, relates to the rejection of evidence offered on behalf of the defendant. The evidence sought to be introduced was that of witness C. E. Rogers giving a statement made to him by the deceased; witness says: "It was some days before this occurrence, probably two or three weeks I could not be positive about that." The statement which was excluded from the jury was: "Mr. Bowles told me that he were going down to Mr. Trail's to f—k Lona; he said he knowed he could, if he could get the old man drunk. That is about all I remember that Mr. Bowles said directly in that." It is not contended that this statement was ever communicated to the defendant but on the other hand it is admitted that it was not communicated to him. In *State* v. *Evans*, 33 W. Va. 417, it is held: "Evidence of communicated threats is calculated to shed light upon the mental attitude of the prisoner towards the deceased when the homicide occurred; uncommunicated threats are evidence of the mental attitude of the deceased towards the prisoner. Both are admissible." The words attributed to Bowles were not a threat against, nor to do violence to the defendant but a statement of what he proposed to do with defendant's daughter, first getting the defendant drunk. It is shown by the record that the defendant and the deceased were good friends, the prisoner himself spoke of him as his friend and said he had always taken him to be his friend. Counsel for defendant do not cite any authority for the admission of declarations of this character but only as to threats of violence, and I find no such authority. In *Newland's Case*, 27 Kan. 764, it is held: "In a criminal prosecution for assault and battery the defendant has no right to put in evidence the declaration of the party assaulted made before or after the affray in reference thereto." In *State* v. *Zellers*, 7 N. J. L. 265, it is held: "A conversation of the deceased with a third

person, or acts of the deceased which never came to the knowledge of the prisoner cannot be received in evidence." I am unable to see how the defendant is prejudiced by excluding this declaration of the deceased which was not communicated to the defendant and of which he had no knowledge, and consequently could in no way be affected by it. The only effect its introduction could have had, if any, would be to lower the character of the deceased in the estimation of the jury, and have a tendency to lead the jury to believe the purpose of the visit of the deceased to the home of the defendant was to debauch his daughter when they should consider this declaration in connection with the evidence of deceased's conduct toward the daughter on the night of the killing, but it in no way tended to prove enmity in the mind of, or malice of the deceased towards the defendant himself. It was properly excluded.

The second assignment of error is the giving of instructions for the State as set out in bill of exceptions No. 2, exceptions going to each and every one of said instructions. The first instruction is defining the reasonable doubt. The second instruction as modified and given is as follows: "The court further instructs the jury that the credibility of witnesses is a question exclusively for the jury; and the law is that where a number of witnesses testify directly opposite to each other the jury is not bound to regard the number of witnesses who may have testified on one side as against the number who testified on the other side; the jury have the right to determine from the appearance of the witnesses on the stand, their manner of testifying and their apparent candor and fairness, their apparent intelligence or lack of intelligence, the interest of the witnesses in the result and from all other surrounding circumstances appearing on the trial determine which witnesses are more worthy of credit and what is relative weight of any such testimony, and to give credit accordingly." While these two instructions are included in the bill of exceptions they are not relied upon as being erroneous in the briefs of counsel for the defendant and are deemed fair and proper. Instruction No. 3 is objected to because it is claimed that it clearly deals with the weight and value jurors should give to certain testimony. The instruction reads as follows: "The court further instructs the jury

that in determining the weight to be given the testimony of different witnesses in this case, the jury are authorized, to consider the relationship of the witnesses to the parties if the same is proved; their interest if any in the results of this case, their temper, feeling or bias if any has been shown; their demeanor whilst testifying; their apparent intelligence and their means of information, and to give such credit to the testimony of such witnesses as under all the circumstances such witnesses seems to be entitled to." The instruction does not convey to the minds of the jury any indication of the weight given to the testimony by the court of any witness, but simply instructs the jury what matters may be taken into consideration by them in considering the testimony of witnesses who are proven to be within certain relationship to the parties, and to consider the interest of such witnesses in the result of the case, "their temper, feeling or bias if any has been shown; their demeanor whilst testifying; their apparent intelligence and their means of information," and in view of all these things to give such credit to the testimony of such witnesses as they might seem to be entitled to. Nothing can be drawn from this instruction to indicate the bias of the court as touching the weight of the evidence of such witnesses. Counsel for defendant cite in support of their position in regard to Instruction No. 3, point 20 Syl. in *Ward* v. *Brown*, 53 W. Va. 227: "The giving of erroneous instructions bearing upon the weight and value of certain testimony when the evidence is contradictory is cause for reversal." This raises the question, what is an erroneous instruction bearing upon the weight and value of certain testimony? I take it that it is an instruction not leaving the whole question of the weight of the evidence with the jury as in this case, but one which conveys to the mind of the jury the opinion of the court in relation to the weight of such testimony, or an instruction which leads the jury to the conclusion that the mind of the court is that the weight of such testimoy preponderates the one way or the other, but there can be no objection to the court instructing the jury in relation to all the elements which are proper to be taken into consideration by the jury in weighing the testimony. It is contended that Instruction No. 4 should not have been given, at least without giving No. 10 asked for by the defendant in connection there-

with.   Instruction No. 10 is as follows: "The jury are further instructed that if they believe from the evidence that Thomas C. Trail was not attempting to take the life of Peter Bowles at the time of the cutting, but was defending himself from the assault made upon him by Alfred Maynard or Peter Bowles, or both of them, then this would be substantial denial of criminal intent upon the part of the said defendant, and throws upon the State the burden of proving such intent beyond a reasonable doubt, and the accused is not required to sustain such defense by a preponderance of testimony, and the jury should find the defendant not guilty." Instruction No. 4 is point 11 in the syllabus of the case of *State* v. *Cain*, 20 W. Va. 679, and given in *Hill's Case*, 2 Grat. 595. And No. 10 is misleading; the burden of proof was already on the State to prove criminal intent beyond a reasonable doubt, the criminal intent is the gist of the offense and without such proof full and clear no indictment for crime could be sustained. If the homicide is proven to have been committed by the defendant then the presumption of murder in the second degree arises against him and the burden then falls on him to make such defense as will reduce the crime below such degree, or, as will justify the act, and such defense may be found in the consideration of the evidence and case made by the State in connection with that adduced by the defendant. This is a binding instruction, not as to the degree of crime, but that if the jury should believe that defendant was defending himself from the assault of Maynard, or Bowles, or both of them, it would necessarily amount to justifiable homicide. Defendant might have been defending himself against an assault, and yet not justified in killing his assailant, that depends upon all the evidence and the circumstances. No. 4 was properly given and No. 10 was properly refused. Instruction No. 5 given for the state is in the following words: "The court further instructs the jury that to convict one of murder it is not necessary that malice should exist in the heart of the accused against the deceased, if the accused was guilty of striking with a deadly weapon another, and of killing him, the intent and malice may both be inferred from such act; and such malice may not be directed against any particular person, but may be such as shows a 'Heart regardless of social duty and fatally bent on mischief.'"

It is contended by counsel for defendant that the words
of this instruction tended to mislead the jury; that "An in-
struction of this sort is designed for a case in which the
party has killed one whom he did not intend to kill, in an
effort to take the life of another whom he did intend to kill.
It is founded upon the very nature of the case itself and
upon public policy, the law embodied in such an instruction
having for its end the safety and protection of society.    *
*   *   *   *   *   This law as embodied in instruction No. 5 is
intended to meet that class of cases where the killing of the
particular person was not intended by the defendant, and to
show that express malice need not be affirmatively shown
against the very party that is killed." And it is contended
that in case at bar there was no third party which the de-
fendant intended to kill and in an effort to do so took the
life of Bowles. The defendant in his testimony describing
his fight with Albert Maynard says: "He punched or
knocked me, or something, and I got down, and if I did
any harm at all was while I was down, or hurt anybody; I
hit something; I was doing what I could.  Ques.  Who was
you trying to hit?  Ans.   I was fighting Albert Maynard
all the time, or I thought I was."   Here according to the
testimony of the defendant he was in a fight with Maynard and
if he ever struck the blow that hurt and killed Bowles it was
while down and in the fight with Maynard.   So that if the
object of the instruction is as contended by defendant's coun-
sel it is entirely adapted to this case, in harmony with the
evidence of the defendant himself.   It is contended that In-
struction No. 7 given for the State, in the following words:
"The court further instructs the jury that if they find
from all the evidence that the homicide is proven, the pre-
sumption is that it is murder of the second degree, and that
the burden is on the State of showing that it is murder of the
first degree, and upon the accused of showing that it is without
malice and is, therefore, only manslaughter, or, that he has
acted lawfully, and is, therefore, not guilty," is "ambiguous,
indefinite, uncertain, misleading and liable to be misunder-
stood and misconstrued by the jury to the prejudice of the
prisoner and contrary to well established law;" that the pre-
sumption of the innocence of the prisoner follows him in
every stage of the trial until the State has proven every el-

ement of guilt as charged in the indictment against him beyond a reasonable doubt. . Counsel admit that to the mind of a person trained in the law the instruction could be easily explained and the meaning of the court understood but to a jury composed of tillers of the soil it could not be so well comprehended, to such men the instruction as given must have meant "that when a homicide has been proven the presumption is that the prisoner at the bar is guilty of murder in the second degree" &c. This is a reflection upon the intelligence of any jury that might be gathered up in any community in this State. The defendant is on trial for committing the homicide, the homicide is an admitted fact and a fact within the knowledge of all the people connected with the trial and the instruction could not mean that if the jury should find from all the evidence that a homicide had been proven that the presumption would follow that the defendant had committed it, regardless of evidence connecting the defendant with it, simply from the fact that the indictment charged him with the crime. The instruction could only mean that if the homicide had been proven to have been committed by the defendant then the presumption followed as to the degree of murder when it has been proven that a homicide has been committed by the accused, then the presumption arises that the accused is guilty of murder in the second degree, and to elevate it to first degree murder the burden is upon the State and to reduce it below the presumed degree the burden is upon the defendant; and the instruction further says, that if he would justify the homicide it was for him to show that he had acted lawfully and was therefore not guilty. It is further contended that instruction No. 7 is not in harmony with instruction No. 1, given on behalf of the defendant, where the jury is instructed that the defendant is presumed to be innocent of the charge until he is proven guilty beyond all reasonable doubt and that this presumption follows him in every stage of the trial until the State has fully proven every element of guilt as charged to the exclusion of every reasonable doubt and that unless the jury believe from the evidence that the State had so proven every element of guilt, then they should find the prisoner not guilty. The instructions are not out of harmony, No. 7 only instructs upon the presumption of murder in the second de-

gree when the homicide has been proven and only instructs as to one point of the law. It isn't required that every instruction should cover all the points of the law in the case. Instruction No. 7 is good for the purpose for which it was given and is entirely in harmony with defendant's instruction No. 1.

Bill of exceptions No. 3 goes to the refusal of the court to give the instructions Nos. 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14 and 15. No. 3 is in the following words: "The court instructs the jury that when one without fault himself is attacked by another, in such a manner, or under such circumstances as to furnish reasonable grounds for apprehending a design to take away his life, or to do him some great bodily harm, and there is reasonable grounds for believing the danger imminent that such design will be accomplished, and the person assaulted has reasonable grounds to believe, and does believe such danger is imminent, he may act upon such appearances and without retreating, kill his assailant, if he has reasonable grounds to believe, and does believe, that such killing is necessary in order to avoid the apparent danger, and the killing under such circumstance is excusable, although it may afterwards turn out that the appearances were false, and that there was in fact neither design to do him some serious injury, nor danger that it would be done. But of all this, the jury must judge from all the evidence and circumstances in the case," and is, under the evidence and circumstances of this case, unobjectionable and should have been given.

Instruction No. 4 offered by counsel for defendant: "The court further instructs the jury that a witness may be impeached, and discredited by prior inconsistent statements, and if the jury believe from the evidence in the case that the witness Albert Maynard made inconsistent and contrary statements concerning the killing of the deceased, Peter Bowles, then the jury has the right to disregard his whole testimony, or give it such weight to which they think it is entitled:" was intended to meet the testimony in the case by which the witness Albert Maynard was contradicted in a material part of his testimony by several witnesses. In his testimony in chief upon the trial he says, when Trail struck Bowles with the knife witness was standing behind a chair, "I took the chair

and went around Mr. Trail and carried the chair between him and me and went out of the house to the draw-bars where the road was; I looked back to see if I could see Mr. Trail and did not see him." That he then set the chair down and crossed over the draw-bars and went to his brother's. Being recalled he was asked about the conversation that he had had with William Hicks at a time and place mentioned and was asked if Hicks did not say to him "that if you were not careful you would swear a damned lie, and that you replied that in a case like this you had to swear. Ans. No sir, I never said any such a thing." And was asked if he did not at the time of the inquest in the presence of James F. Pullin one of the jurors "say that you aimed to strike him with a chair and that the chair hit the joists, and the joists was so low you could not make the lick and that you punched him with the chair and punched him much, and then you carried the chair out with you out of doors." Which statement he denied making. William Hicks being recalled stated that he had the conversation with Maynard about three weeks ago near Colonel Burnside's store in which he stated that in a case like this he had to swear. James F. Pullin, member of the coroner's jury on the 31st of October, testified that "Albert Maynard stated in the presence of the jury upon that occasion that he struck at Thomas C. Trail with a chair and the joists being low the chair struck the joists and that he could not make the lick and that he then punched him with the chair and punched him much." These statements are in direct contradiction of Albert Maynard's account of the affray at the time of the killing of Bowles. The instruction tells the jury that if they believe from the evidence that he made inconsistent and contradictory statements relating to the killing or concerning the killing, then the jury had the right to disregard his whole testimony or give it such weight as they should think it entitled to. Hughes on Instructions to Juries, sections 367–368. Instruction No. 4 should have been given.

Defendant's instruction No. 6 is as follows: "The court further instructs the jury that before they can convict the prisoner, Thomas Trail, they must believe beyond a reasonable doubt that every fact necessary to show the prisoner's guilt has been established by full proof, and if the jury have a reasonable doubt upon any fact necessary to show the guilt

of the prisoner, then they should give the benefit of that doubt, and find him not guilty." It may be presumed that No. 6 was refused because No. 1 given for defendant covered the same point but as the defendant is entitled to have instructions given in his own language when they correctly propound the law, and it is contended that No. 1 given on behalf of the defendant simply relates to the general doctrine or principle that they must believe him guilty beyond a reasonable doubt before they can find him guilty. Instruction No. 6 directs the attention of the jury particularly to the principle which requires proof beyond a reasonable doubt of every fact necessary to show the prisoner guilty and that if they have such doubt upon any fact necessary to show his guilt, then they must find him not guilty. See *State* v. *Flanagan,* 26 W. Va. 116, syl. points 3, 4 and 5. As to instructions Nos. 7, 8, 9, 13 and 15 refused by the circuit court, counsel for defendant say nothing about them in their briefs and do not rely upon them, and they appear to be properly refused by the court. Instruction No. 11 offered by defendant is point 5 in syllabus, *State* v. *Zeigler,* 40 W. Va. 593, which has been overruled in *State* v. *Staley,* 45 W. Va. 792, syl. point 5. As to instruction No. 12, which reads as follows: "The jury are further instructed that if they are satisfied from the evidence that Alfred Maynard was armed with a chair and attacked the defendant, and that the defendant, had reason to believe, or reasonable cause to believe and fear, and that he did believe and fear, that great bodily harm was to be inflicted upon him, and that under the influence of such belief and fear, he struck the blow with the intent to defend or protect himself against Alfred Maynard or Peter Bowles acting together, then the defendant is not guilty." Under the evidence and circumstances of this case this instruction should have been given. The testimony of the defendant is that he was attacked by Maynard with a chair and that he (defendant) was defending himself as best he could. From defendant's testimony he was in great danger and had reason to believe he was in danger of great bodily harm—witness says Maynard was a very powerful man, says that he struck at him with a chair and "if it had not been for the chair striking the joists I don't know what he would have done for me."

It is insisted by counsel for defendant that No. 14 should

have been given without modification as it was offered as follows: "The jury are hereby instructed that a man's house is sacred and his own castle to himself, and if the jury ·believe from the evidence that Thomas C. Trail was attacked in his ·own house by Alfred Maynard, armed with a chair or other dangerous weapon, and the said Thomas C. Trail had reason to believe and did believe that he was in danger of losing his life, or in danger of suffering great bodily harm at the hands ·of his assailant, he is not required to retreat, but may defend his life or person by taking the life of his assailant without retreating; and if the jury further believe from the evidence that Peter Bowles joined Alfred Maynard in the assault on 'Thomas C. Trail, and in that affray lost his life at the hands ·of Thomas C. Trail, then you shall find the defendant not .guilty." This lacked one essential element in that it left out the fact that he had reasonable grounds to believe and did believe such killing was necessary to defend his own life or prevent great bodily harm. No. 14 as modified, which reads :as follows: "The jury are further instructed that if they believe from the evidence that Thomas C. Trail without fault was attacked in his own home by Alfred Maynard, armed with :a chair or other dangerous weapon, in such a manner and under :such circumstances as to furnish reasonable grounds for apprehending a design to take away his life or to do him some great bodily harm, and that the said Thomas C. Trail had reasons to believe and did believe that he was in danger of losing his life, or danger of suffering a great bodily harm at the hands of his assailant, he was not required to retreat, but had the right to defend his life or person, by using force for force in resisting such attacks and by taking the life of his assailant, if necessary to protect himself from great bodily injury or ·to save his life from the threatened injury, and if the jury ·further believe from the evidence that Peter Bowles joined Alfred Maynard in the assault on Thomas C. Trail, and in that affray lost his life at the hands of Thomas C. Trail, then you should find the defendant not guilty, but all of this the .jury must decide from all the evidence in the case:" is bad for the reason that it says the defendant "had the right to defend his life or person by using force for force in resisting .such attacks and by taking the life of his assailant if neces- .sary to protect himself from great bodily injury or to save

his life from the threatened injury.'' Under this instruction the defendant would have to prove that the killing was absolutely necessary and not that he had ground to believe and did believe it necessary to protect himself from great bodily harm, or to save his own life. So that neither No. 14 as offered by defendant nor as modified and given was correct.

The fourth assignment of error goes to the mis-conduct of the jury in separating, &c., as set out in bill of exceptions No. 5, and the fifth assignment of error, that the court erred in refusing to set aside the verdict and award defendant a new trial on the grounds that the verdict was contrary to the law and the evidence. As the case must be retried it is deemed unnecessary to discuss these last mentioned assignments of error.

For the reasons herein stated, the judgment of the circuit court is reversed, the verdict of the jury set aside and the case remanded to the circuit court for a new trial.

*Reversed.*

BRANNON, JUDGE:

If it is intended to decide that defendant's instruction six should have been given, I do not agree to it. If the question of the homicide were involved, it would be good; but that is conceded, not a question of contest. This instruction is capable of being construed to say that unless the state disproves self-defence beyond reasonable doubt, the defendant must be acquitted. It misleads. The only question was, is the prisoner entitled to acquittal on the plea of self-defense? The *Flanagan case* has no import in this matter. It was whether the accused was guilty of the *corpus delicti* on circumstantial evidence, not self-defence.

Instruction fourteen as modified is likely ground for reversal; and yet I realize that its defect may have extended little influence, taken with other instructions.

SANDERS, JUDGE, (*dissenting in part*):

I concur in the conclusion reached, to reverse the judgment and grant the prisoner a new trial. But I cannot consent that the evidence of the witness, Rogers, wherein he relates a statement made to him by the deceased, to the effect that the deceased told him that he was going to Trail's home to

debauch his daughter, and that he knew he could do so if he could get the old man drunk, is inadmissible. I think this evidence admissible, as corroborative of the testimony of the defendant, if for no other purpose. It is true this statement was not communicated to Trail, yet, at the same time, if the statement was made, it goes to show the previously formed intention of the deceased to go to the home of Trail and attempt to debauch his daughter. There is a conflict in the evidence as to the circumstances under which the killing was done. The state endeavors to show that while Bowles was standing with his back to the fire. Trail came into the room, walked up to him and stabbed him, without any provocation or justification, while, on the other hand, Trail claims that it was in defense of his home and the virtue of a member of his family. He claims that shortly before the killing, he was told to go home, that Bowles was making improper advances toward his daughter, and on his arrival, Bowles assured him that he had the highest regard for him and his family, and that he did not intend anything by what he had done; and Trail says he became angry at that time, but with these assurances the matter rested in abeyance for a short while; that he went into the house and sat down by the fire and dropped off to sleep, and shortly afterwards was awakened by a noise, and found Bowles making improper and indecent advances to his daughter, who was at that time lying upon the bed in the room where they were. · This theory of the case the prisoner had the right to present to the jury, if not for the purpose of justification, certainly to negative malice, and to show that the killing was done in the heat of passion. Then if I am correct in asserting that this could be given in evidence for the purpose of showing hot blood, then it seems to me clear that any evidence which goes to corroborate or to sustain this theory, is admissible. The prisoner not only had the right to give his own version of it, to the jury, but he should have been permitted to introduce any other evidence which would tend in any degree to strengthen or corroborate his testimony in this regard. Having this right, and relating these facts to the jury himself, it became a question for the consideration of the jury, and it may be very material that his evidence should have corroboration. Therefore, if

he could show that the deceased, shortly before the killing, stated that he intended to do the very thing which Trail charges that he did do, and on account of which he says he was provoked and angered until, in the difficulty which followed, the life of the deceased was taken, he certainly should have had the right to do so.    Trail says that the deceased did it, and if this evidence had been permitted to go to the jury, they would have had before them evidence that the deceased said he intended so to do, and that evidence, taken in connection with the evidence of Trail, that he did do it, would be strongly corroborative of the evidence of the defendant. There can be no question but what if the deceased had been charged with an assault upon the daughter, that this evidence would have been admissible.    If so, I fail to see why it is not admissible in favor of the father upon the charge of slaying the assailant of his daughter.    For these reasons, I think the evidence should have been admitted.