# CHARLESTON.

### STATE *v.* J. W. McHENRY.

## Submitted March 13, 1923.    Decided March 20, 1923.

1. CRIMINAL LAW—*Facts and Circumstances not Tending in Appreciable Degree to Establish Alleged Crime Should be Admitted if at all With Caution.*

   On the trial of one indicted for having in his possession a mixture of fermenting substances and materials for the purpose of making intoxicating liquors, in violation of section 37, chapter 32A Barnes' Code 1923, evidence of facts or circumstances tending in no appreciable degree to establish the fact of the alleged crime should be admitted, if at all, with caution. (p. 398).

2. SAME—*Circumstances Insufficient When Considered Separately may be Sufficient to Constitute Proof of the Offense When Considered as a Whole.*

   But there is a distinction between the sufficiency of such circumstances to convict and their admissibility as facts in a chain of circumstances tending to show guilt, and generally objection to the evidence of such circumstances on the ground of irrelevancy is not favored, for though separately considered they may not be sufficient to establish guilt, they may by their number and joint operation, especially when otherwise corroborated, be sufficient to constitute proof of the offense. (p. 398).

3. SAME—*Circumstantial Evidence to Convict Should Exclude to Moral Certainty Every Hypothesis But that of Guilt; Circumstantial Evidence Should Always be Scanned With Caution.*

   To convict on circumstantial evidence alone, it should to a moral certainty exclude every hypothesis but that of guilt; and circumstantial evidenc should always be scanned with caution. (p. 398).

4. SAME—*Specific Intent Must Be Established Beyond Reasonable Doubt Where Essential Element of Crime Must be Wholly Inconsistent with Theory of Innocence.*

   Where, as in this case, the specific intent to accomplish a particular purpose is an essential element of the crime, it is necessary to establish the fact of that intent beyond a reasonable doubt, and while such intent may be established by ex-

isting circumstances, these must be wholly inconsistent with the theory of innocence.  (p. 398).

5.  WITNESSES—*Supposed False Evidence Must Relate to Material Fact to Justify Disregard by Jury.*

In order to justify a jury in desregarding the evidence of a witness because he has in their opinion sworn falsely, such supposed false evidence must have related to some material fact in the case.  (p. 398).

6.  CRIMINAL LAW—*Requested Instruction that Jury Might not Consider Circumstances Unless Tending to Establish Guilt Properly Refused; Court not Presumed to Have Admitted Immaterial or Irrelevant Evidence Should Be Controlled by Other Method than Self-Inculpating Instructions.*

A proposed instruction to the jury that they might not consider circumstances shown in evidence admitted unless they had some substantial connection with, bearing on, or tended in some degree to establish the guilt of defendant, is rightly rejected.  The court is not presumed to have admitted immaterial or irrelevant evidence.  The effect of any such evidence upon the verdict should be controlled by some other method than by such self-inculpating instructions to the jury.  (p. 398).

7.  SAME—*Court May, and Upon Request Should, Direct Verdict for Defendant Where Evidence Insufficient to Sustain Conviction.*

Where, as in this case, the evidence is wholly insufficient to justify a verdict of guilty, the court may, and if requested should, direct a verdict for the defendant.  (p. 398).

Error to Circuit Court, Fayette County.

J. W. McHenry was convicted of unlawfully having in his possession mash for the purpose of making intoxicating liquors, and he brings error.

*Reversed and remanded.*

*Dillon & Nuckols,* for plaintiff in error.

*E. T. England,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

MILLER, PRESIDENT:

Defendant was tried and found guilty upon an indictment charging that he "did unlawfully make and have in

his posession, and under his control, and did have an interest in a certain mixture of fermenting substances and materials, commonly known as 'mash' for the purpose of making intoxicating liquors,'' in violation of section 37, chapter 115 Acts of the Legislature of 1920, section 37, chapter 32A Barnes' West Virginia Code 1923.

To the judgment on the verdict that defendant pay a fine of one hundred dollars and be confined in the county jail for a period of two months, he sued out the present writ of error.

As grounds for reversing the judgment counsel for defendant assign the following: '' (1) Because the verdict is contrary to the law and the evidence and should have been set aside. (2) Because the court admitted illegal and improper evidence on the part of the State over the objection of the defendant. (3) Because the court refused to permit defendant to introduce certain evidence offered by him. (4) Because the court gave the jury instructions One and Two at the instance of the State over objection. (5) Because the court refused to give at the instance of defendant instructions Three, Five, Six and Seven. (6) Because the court over objection of defendant (after all the evidence had been introduced, argument of counsel thereon and instructions to the jury) permitted the jury to return into the court room and there examine, smell and inspect the alleged 'mash' to be considered by them in the determination of the case without an opportunity on the part of defendant to cross examine or rebut in any way the effect of the illegal evidence gathered by the jury by its inspection. (7) Because the court refused to set aside the verdict and grant the defendant a new trial.''

We need not consider these points in their order of precedence; they are more or less involved in each other. It is not only fully proven, but admitted, that defendant did have in his possession a mixture composed of cracked corn and molasses skimmings, and he says also of middlings, immersed in water, and that the possession of such mixture, if possessed for the purposes alleged in the indictment, would constitute a violation of the statute. The fact in controversy, affirmed by the indictment, but put in issue by the defendant's plea of not guilty, is whether defendant's possession of

said substance was as charged, ''for the purpose of making intoxicating liquors.''

Much evidence was introduced on the finding and character of the mixture, a fact which was not denied by the defendant. The State undertook by circumstances alone to show possession of the mixture for the unlawful purposes alleged. There was not a particle of evidence showing or tending in any appreciable degree to show that defendant had been making or selling liquor, or had any still or other apparatus in his possession used or capable of being used for that purpose. Before finding the mash in the grain or feed house, the public officers, between nine and twelve o'clock in the nighttime, invaded defendant's house in the country; after defendant and his family had retired for the night, claiming the right to do so upon a search warrant, not produced, and after searching the house and premises found no mash or contraband liquor of any kind, nor any apparatus for making liquor or any evidence that liquor had been made there. The only evidence found was the possession of the mash in the outhouse, which defendant explained was slop or hog feed, which he was feeding to his hogs and protested against the act of the officers in pouring it out on the ground.

The only other facts and circumstances relied on by the State to show guilt, the evidence of which was objected and excepted to, consisted: First, of the testimony of a young woman of the neighborhood, who in May, six months previous to the raid upon defendant's premises, that she had assisted in nursing defendant's wife in childbirth, and that during that time she had seen defendant mix up with water something like yellow liquor and give it to his wife and children; that later she had seen defendant at her father's house, when in her opinion he had been drinking; that she had never seen liquor before, but from the odor of defendant's breath, she concluded that it smelled of liquor; that on another occasion or two she had seen defendant going along the public road on his horse leaning over as if he were intoxicated, and that apparently he was under the influence of liquor. Second, the evidence of the officers and others, that a few

days after the finding of the mash and the arrest of defendant, they had, on searching the territory in the neighborhood of defendant's residence, at a point from three to five hundred yards therefrom, found two holes in the ground side by side, about the size of a barrel and about two and a half feet deep, but not proving that they were on defendant's premises, or that they had ever been used for or were adapted to the making of liquors; that these holes were covered with moss and were full of dried leaves, and across the top of which a tree had fallen. Third, that some twenty-five or thirty yards from these holes were found some coals or evidences of a fire and that wood had been burned there.

The second of the assignments of error relied on covers these three classes of testimony. The question is: Was this evidence, or any of it, admissible for any purpose? Does it do more, if it does that, than to arouse a bare suspicion of guilt? Without the evidence of the possession of the mash, no one would think of the connection of these facts with the making of liquor. Proof of facts which at most tend only to arouse suspicion, but which in no way proves the actual commission of the crime alleged, will not sustain a verdict of guilty. Evidence tending in no appreciable degree to establish the fact of the crime should be admitted with caution, if at all, for by admitting it the court impliedly says to the jury that it does in some degree bear on the fact in controversy. *State* v. *White,* 66 W. Va. 45; *State* v. *Chafin,* 78 W. Va. 140; *State* v. *Donahue,* 79 W. Va. 260.

Of course there is a distinction between the sufficiency of such circumstances to convict and their admissibility as facts in a chain of circumstances tending to show guilt. Objection on the ground of irrelevancy, says the Supreme Court of Virginia, is not favored. *Ely* v. *Gray,* 125 Va. 708. And it was held in that case that circumstances altogether inconclusive, if separately considered, may by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof. One of the contentions likely made on the testimony would be that as the defendant used liquor himself and gave it to his family under the circumstances, he would in all probability engage

in making it and of having mash on hand for that purpose. But a mixture of cracked corn, middlings and molasses skimmings would suggest slop or feed for hogs rather than mash for the purpose of making drink for human beings. However, the courts in laying down rules of evidence should not in cases of this character too strictly limit public officers in showing circumstances tending to show guilt. Taken separately and disconnected from the main fact they may have very little relevancy to the subject of the guilt of the accused, but considered together and in relation to the *factum probandum*, they may point conclusively to the guilt of the accused. Finally, however, they must in connection with the main fact amount to absolute proof justifying a verdict thereon. Burrill on Circumstantial Evidence, pp. 151, 630, 735. To convict on circumstantial evidence it is essential that the circumstances should to a moral certainty exclude every hypothesis but that of guilt. *State* v. *Flanagan*, 26 W. Va. 116, 122; *State* v. *Sheppard*, 49 W. Va. 582, 611; *State* v. *Trail*, 59 W. Va. 175. Each circumstances should be established as if the whole issue rested upon it. *State* v. *Trail, supra.* And circumstantial evidence is always scanned with great caution. *State* v. *Gunnoe*, 74 W. Va. 741; *State* v. *Gebhart*, 70 W. Va. 232. We are not disposed to hold in this case that the court should have ruled out the evidence of these facts as the trial progressed, and we can not say that if they had been sufficiently supplemented by other facts and circumstances having relation to the main fact to be proved, they would not have constituted a material part of the chain of circumstances, amounting to proof of the main fact involved. The insufficiency of such facts and circumstances thus admitted can always be controlled by the court by instructions to the jury, or on a motion to set aside the verdict, or otherwise, if they be insufficient to support it.

In this case the facts thus proven and relied on for conviction did not go unchallenged. Defendant testified that he had seen these holes in the ground soon after he moved on the land, where he had lived some six months prior to his arrest, but that he did not put them there and did not know who did. He admits preparing liquor for his wife when she

was sick, and of giving some diluted to his children in connection with castor oil; and he swears that the liquor so used was red liquor, which he had bought at Montgomery for that purpose. . He denies that he was ever intoxicated at the home of the witness Miss Ramsey, or was drunk on the public road as testified to by her and another witness. He and his wife, corroborated by two neighbors, swear that the mash was slop or hog feed and that it had been prepared and used for that purpose only. One of the neighbors, the operator of a cane mill, swears that he advised defendant as to the use of the molasses skimmings in connection with grain and meal for feeding his hogs and had actually seen him feed his hogs with the mixture.

The point respecting the rejection of evidence offered by defendant does not seem to be relied on here. The particular evidence rejected is not pointed out. We do not see that any evidence material to the issue was excluded on the trial.

The court gave two of the four instructions proposed by the State and rejected the others. The first of those given in effect was that, if the jury believe from the evidence beyond a reasonable doubt that defendant had in his possession the mash in question for the purpose of making intoxicating liquors, they should find him guilty as charged. The second related to the effect the jury was permitted to give the testimony of any witness who in their opinion might have testified falsely. The first, good in form, was predicated of course upon the theory that there was evidence in the case upon which a jury might find possession of the mash by the defendant "for the purpose of making intoxicating liquors." As we view the record, it is wholly wanting in any evidence of an appreciable degree upon which a verdict of guilty should be allowed to stand, and the instruction should have been rejected on that ground. The law is that when a specific intent to accomplish a particular purpose is, as in this case, an essential element of the crime, it is necessary to prove such specific intent. *State* v. *Poindexter*, 23 W. Va. 805. And while such intent may be proved by existing circumstances, these must be wholly inconsistent with the theory of innocence. The prisoner is presumed to be innocent until his

guilt is established beyond a reasonable doubt. *State* v. *Davis,* 50 W. Va. 100; *State* v. *Roberts, Id.,* 422; *State* v. *Sheppard, supra.*

Instruction number 2 was bad in form for omitting to limit the supposed false swearing to *some material fact.* An instruction not numbered, but presumably number 4, rejected, was good in form to this extent, for it did so limit the jury in disregarding the witnesses' testimony.

Of the seven instructions requested by defendant the court gave numbers 1, 2 and 4, and rejected the rest. Number 1 related to the subject of preponderance of the evidence and the law of reasonable doubt. Number 2 properly laid down the law as to the burden of the State to prove that defendant had the mash for the *purpose of making intoxicating liquors therefrom.* Number 4 covered the law of reasonable doubt in its application to the question of the purpose which defendant could have had in the possession of the mash. The correctness of these instructions is not questioned. Number 3 appears to have been rejected because covered by other instructions given. It does seem to have been covered by number 4, given. Number 5, rejected, would have told the jury that they could not consider circumstances shown by the evidence introduced unless they had some substantial connection with and bearing on or tending in some degree at least to establish the guilt of the defendant. The effect of this instruction, if given, would have been to tell the jury that they were permitted to disregard some of the evidence admitted by the court. The court is not presumed to admit irrelevant and immaterial testimony. The rights of the parties as to such evidence can be properly protected otherwise than by such self-inculpating instructions. Instruction number 6 was on the question of reasonable doubt as to the main fact, namely, the purpose of the defendant in having in his possession the mash, and was good in form and substance, but was perhaps sufficiently covered by instruction number 4, given.

The last instruction, number 7, would have told the jury, as we think the court should have told them, on the evidence in the case, to find for the defendant. We have, in dealing with the points made on the evidence, indicated the opinion

that there was no evidence in the case justifying the conclusion that defendant's purpose in possessing the mash was to manufacture intoxicating liquors.

It follows from the foregoing disposition of the other points of error that the court, as pointed out in the last assignment of error, erred in not setting aside the verdict of the jury and awarding the defendant a new trial. The judgment is therefore reversed, the verdict set aside and the defendant awarded a new trial.

*Reversed and remanded.*