### State *v.* Quint Stull

(No. 6921)

Submitted May 19, 1931. Decided June 2, 1931.

*Wolverton & Ayers,* for plaintiff in error.

*Howard B. Lee,* Attorney General and *R. A. Blessing,* Assistant Attorney General, for the State.

Litz, President:

The defendant, ''Quint'' Stull, was convicted, sentenced to three years in the penitentiary, and fined three hundred dollars, on a charge of operating a moonshine still.

By virtue of a search warrant, C. G. Dick (a member of the department of public safety), Leslie McCutcheon and Claude Hamilton; deputy sheriffs, and L. S. Spencer (a constable and prohibition officer), searched the premises of Stull about midnight of May 21, 1930. They discovered in the ''loft'' of the dwelling a 25 or 30-gallon wash boiler (without lid), burner and fuel tank, presumably used to heat liquids; under the floor of a chicken house three 50 or 60-gallon empty oil barrels, buried in the ground beneath a wooden floor and covered with ''coffee'' sacks; two other barrels or kegs on the floor of the same building; a small burned spot on the floor, covered with a flat rock; and a small keg in a granary containing about one gallon of oats, cracked corn, buckwheat and water. The officers testified that dough was around the top edges of the boiler. They also expressed the opinion that the barrels, buried in the chicken house, had contained mash. Most of them say they encountered the odor of mash in the building. Some would not so state. They all seem to agree in the opinion that particles of meal were around the sides of the barrels and some say that ''chops'' were discernible in the bottoms. All describe the substance in the keg as mash. They could not agree, however, as to whether it contained sugar. Some seemed to think so, while at least one was of the opinion that it was too old to impart a sugar taste. A sample presented by the state at the trial shed no light upon this issue. Moreover, it was agreed that buckwheat was a novel ingredient in mash. There was slight, if any, evidence of dough or similar substance on the boiler at the time of trial, three months after the raid. Here, again, the witnesses for the prosecution disagreed; some stating that the condition of the boiler in this respect had not changed since the capture of the paraphernalia, while others seem to be of the opinion that mice or other agency had meanwhile removed some of the substance. The evidence for the defendant was to the effect that

he purchased the boiler to heat water for domestic purposes; that the substance around the top edges was an accumulation of starch from its use in laundrying clothes; that the mixture in the granary was hog feed; that the three barrels under the floor of the chicken house had been placed by someone unknown to defendant before his removal to the premises four years previously; that he had used them at times for storing canned fruits; that on their removal a short while after the raid they were found to be completely decayed; and that the burned spot on the floor also antedated defendant's residence on the premises. The officers testified in rebuttal, from their examination of the barrels by flashlight, that they seemed to be intact with the exception of a missing hoop from one. If any contained the remains of mash, as some of the officers seem to think, no sample thereof was taken. Not only this, but it is not claimed that either of the two kegs in the chicken house contained any evidence of mash. Furthermore, no liquor or container, bearing the odor of liquor, was found; and a fuel tank, "burner," and wash boiler (without lid) are the only apparatus recovered evidencing a "moonshine still." The theory of the state is that a lid fitting over the boiler had been sealed with dough. If this were so, the dough should have been at least partly on the sides rather than on "the top or opening of the boiler," as stated by witnesses for the prosecution. "Proof of facts and circumstances which arouse strong suspicion of guilt or guilty knowledge of a crime on the part of the accused, but which do not prove beyond a reasonable doubt his criminal agency in its commission, will not sustain a verdict of guilty." *State* v. *Dudley*, 96 W. Va. 481; *State* v. *Bennett*, 93 W. Va. 548; *State* v. *Flanagan*, 26 W. Va. 116; *State* v. *McHenry*, 93 W. Va. 396.

In view of the many material contradictory statements of the prosecuting witnesses and the fact that the state's case depends entirely upon circumstantial evidence, we are of opinion to reverse the judgment, set aside the verdict and grant defendant a new trial.

*Judgment reversed; verdict set aside;
new trial awarded.*