The opinion of the court was delivered by
Brewer, J.:
On the 27th day of September, 1881, an information was filed in the district court of Brown county,, charging the defendant and one Grant Harrington with an assault with intent to kill. Upon the trial Grant Harrington was acquitted, defendant found guilty of assault and bat *765 tery, and sentenced to pay a fine of $100 and costs. From this sentence he brings his appeal to this court. A brief statement of the general facts of the case will help to a clearer understanding of the particular questions involved. Fielding F. Miles and Eldred Harrington are neighbors and farmers, in Brown county. While neighbors, the records of this court show that they are anything but neighborly. See the cases of Miles v. Harrington, 8 Kas. 425, and Harrington v. Miles, 11 Kas. 480. Two roads cross at right angles. Northeast of the corner is the farm of Miles, and southwest Harrington lives. Near the southwest corner of Miles’s farm there were several gaps in the fence, through which cattle ■could easily pass. On the morning of June 7,1881, Miles, driving west from his house toward the crossing, saw some of Harrington’s cattle coming across the road and entering through these gaps upon his farm; while Mrs. Harrington was coming from her house, with the evident purpose of driving the cattle back. Miles unhitched one of his horses from the wagon, and mounting it rode after the cattle, some of which, starting out of the field, went north on the road running north and south. Miles, after going up this road, came ■back toward the corner and there met the defendant, Lemuel Newland. The latter, a young man in the employ of Harrington, had ridden up for the purpose of driving the cattle home. Obviously Miles was striving to keep the cattle on his own place and impound them, while Newland was aiming to drive them back to Harrington’s place. Each being mounted, they came together at one of the gaps in the fence. Newland was riding a stallion, and the animal bit and snapped at the horse upon which Miles was riding. Miles, as he says, for the purpose of protecting his own animal caught hold of the reins of Newland’s horse. Newland told him to let go. He failed to do it, and Newland struck him with his whip. Both parties dismounted, let their horses go, and engaged in a fist fight. In a few moments Grant Harrington, the son of Eldred Harrington, came up with a pistol in his hand and handed it to Newland. Miles and Newland struggled *766 with the pistol, and during the struggle it went off, but without hitting anybody. The only connection that Grant Harrington had with the affray was in getting the loaded pistol and handing it to Newland, and the only evidence of any intent to kill on the part of Newland was in the discharge of the pistol. The jury having acquitted Harrington altogether and Newland of any intent to kill, we can lay out of our consideration everything pertaining to that branch of the case, and consider simply whether there was error in the proceedings regarded as an action for simple assault and battery. The first questions presented are as to the admission and rejection of testimony. It appears that Miles, when he first came down the road from his house, and some minutes before the affray with Newland, met Mrs. Harrington, and the defense sought to prove what his statements were to her as to his intentions with regard to the cattle; also that after the affray was over, as an officer, Miles took possession of New-land and carried him to Hiawatha, the county seat, and the defense also sought to show his statements made as they were going to Hiawatha, in reference to the affray and the purpose with which he entered into it; but this testimony was ruled out, and this is the first matter for our consideration. We think the ruling of the court was correct. The declarations were not made during the affray, but some time before and after it; they were not therefore competent as res gestee. They were not made by a party to this action, or any one authorized to bind either party by his statements. They were not impeaching testimony, not sought to be introduced to show that the witness had made statements outside the court room different from those made by him on the witness stand. The testimony was simply hearsay. (The State v. Potter, 13 Kas. 414.)
Another matter is this: Miles testified that when he took hold of Newland’s horse, Newland struck him, with the whip, a blow which skinned his nose. Newland when on the stand testified that he struck Miles with his whip, hitting him on the hand which was holding his horse. His counsel subse *767 quently asked him the question whether on that occasion he struck Miles on the nose with the whip. This question the court refused to permit the witness to answer. Probably this was error. As a general rule, each party to an affray like this ought to be permitted to testify in detail in reference to all the matters spoken of by the opposite party. There should be full latitude of inquiry as-to all the circumstances of the encounter. If for no other reason, a jury is-better able to pass upon the credibility of either after hearing his .version of the whole matter; and yet, notwithstanding we think the question ought to have been answered, it-does not seem that the refusal to permit an answer was such an error as compels a reversal of the judgment. Each of the parties testified that Newland struck Miles with his whip, and whether the blow hit his hand or his nose was really a matter of little moment. It was, according to both, the first blow struck. So far as the question to Newland, on cross-examination, as to what he would have done with the pistol if Miles had not let go, it probably passes out of the case with the acquittal of any intent to kill. Whether the question put to the witness Bassett was proper or improper, we need not consider, for the record fails to.show that he-answered it. These are all the matters necessary to be noticed, with reference to the admission and rejection of testimony..
We pass therefore to the consideration of the errors alleged with reference to the instructions. The defendant asked 22: separate instructions, all of which were refused by the court, and in lieu thereof the court of its own motion prepared and gave 17 separate instructions. Counsel call special attention to nine of the instructions which were refused. We shall not notice these in detail, but simply say in reference to many of them that, so far as they touched upon the questions of a. reasonable doubt, the presumption of innocence, the right of self-defense, and the credibility of witnesses, they seem to have been covered by the instructions given by the court; and as has been frequently held, the court is not bound to repeat instructions or to adopt the precise language prepared by *768 counsel. The fifth instruction refused and the last instruction given require some special notice. The fifth instruction contains these words: “If you find from the evidence that the prosecuting witness, F. F. Miles,-unlawfully assaulted the ■defendants, or either of them, or if himself unlawfully assaulted by the defendants, or either of them, pressed the assault with unnecessary violence, and if requested by the defendants or either of them to desist, refused to do so, but still further pressed the assault, then the defendants were justified in using sufficient force to make said Miles desist; and if they used no more violence than necessary to effect said purpose, then you must acquit the defendants.” This instruction the ■court refused, and properly so. This, it must be remembered, is hot a civil action brought by either of the participants in the affray, to recover damages for injuries suffered. There is no balancing of damages. The quéstion is not which used the most force, nor which was the most of a wrong-doer. It is a criminal prosecution, brought by the state against one of the parties to the affray, charging that he in and by this affray was guilty of an assault and battery. Whether Miles was also guilty, is not now a question. Now if Miles was unlawfully assaulted by the defendant, the defendant was guilty and was properly convicted, and this notwithstanding Miles, by improperly pushing the contest, thereafter became ¡himself also guilty of an assault and battery. In other words, if the defendant unlawfully assaulted Miles hé was guilty, no ■matter what the subsequent outcome of the affray might have ■been. His wrong was not righted by the subsequent conduct of Miles. Nothing which Miles could do could atone to the ■state for the infraction of its law by the defendant.^
Turning to the 17th instruction given by the court, and it reads: “If defendant began the affray, and struck Miles the first blow, then he should be convicted of assault and battery; or, if he did not commence the affray, but willingly participated in a fist fight with Miles, without any endeavor to avoid him, then he is guilty of assault and battery; but if he'acted throughout only in a self-defense which was necessary, or ap *769 parently necessary, to avoid personal' injury, then he should be acquitted.” This instruction was right, and appropriate to the facts as they appeared in the testimony. If two parties meet and have an affray, the party that commences the assault is guilty; and, irrespective of the question as to who first •commences the affray, if thereafter the two willingly engage in a fist fight, and when no apparent necessity of self-defense intervenes, then each is guilty of an assault and battery: and this case, in one of its aspects, presents just this question. The parties met on horseback; there.was some difficulty between them while on horseback, and.at least according to some ■of the testimony, without any thought or purpose of self-defense, each jumped off his horse, and letting the animals go, they engaged in a fist fight.
It is no defense to Newland that Miles was a willing participant in the fight, and it would be no defense to Miles if he were being prosecuted for assault and battery that Newland was also willing for the fight. Take a strong illustration: Supposing these two parties had met and blows had passed between them, and then, stopping blows, they had agreed to fight a duel with pistols, and measuring off the distance between them, each had taken a pistol and fired at the other; now whoever might have been the aggressor in the commencement of the quarrel, the willing participation of each in the duel, and the firing by each of his pistol with intent to kill, would make each guilty of an assault with intent to kill. So here, whichever may have been the aggressor when both were on horseback, the moment they jumped off and willingly engaged in a fist fight, each became guilty of an assault and battery. The instruction was right, and was appropriate to the case.
In conclusion, and upon a review of all the testimony, we think the cardinal mistake of counsel for appellant lies in their effort to show that, considering all the circumstances of the case, Miles was the most of a- wrong-doer. We think it probable that both parties were in the wrong, that each was *770 guilty of an assault and battery, and it would be no more than-justice if -both were punished.
As the case now stands, all we have to inquire is, as to the' propriety of the proceedings against Newland. We have examined the testimony and the instructions-with care. We-see no error which seems to us sufficient to justify a reversal of the judgment; and we think upon the testimony the defendant was properly convicted of assault and battery, and therefore the judgment must be affirmed.
All the Justices concurring.