McNeil v. Mullin.

---

EDWARD McNEIL ᴠ. FRED MULLIN.

No. 13,886.    ( 79 Pac. 168.)

SYLLABUS BY THE COURT.

1. ASSAULT AND BATTERY—*Recoverable Damages.* Damages resulting from injuries received in a mutual combat may be recovered under the allegations of a petition in the usual form for an assault and battery.

2. ——— *Mutual Combat—"First Blow" Immaterial.* If parties fight by mutual consent the aggressions are mutual, and the circumstance of who committed the first act of violence is not material in an action by either party to recover damages for the injuries he received in the fight.

3. ——— *Consent Inferred.* Consent to engage in mutual combat may be inferred from circumstances.

4. ——— *Consent Does Not Affect the Civil Remedy.* If the conduct of the parties to a mutual combat constitute a breach of the criminal law, the consent of either one to participate in the melee does not deprive him of his civil remedy against the other; each contestant may recover from the other all damages resulting from injuries he received in the fight.

Error from Clay district court; SAM KIMBLE, judge. Opinion filed January 7, 1905.    Reversed.

*F. P. Harkness, George L. Davis,* and *R. C. Miller,* for plaintiff in error.

*Coleman & Williams,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.: The plaintiff sued the defendant for damages resulting from injuries inflicted in a fight. The petition was in the ordinary form for an assault and battery involving a mayhem.   The answer pleaded justification.   The evidence given at the trial indicated that insulting words were followed by a mutual stripping of hats and coats, a movement of the defendant toward the plaintiff in an angry manner, mutual challenges of each to whip the other, a statement by the defendant that it would not cost the plaintiff a penny to whip him, a reply by the defendant that he was no more afraid of a dollar than the plaintiff, much vile talk, and then a voluntary separation.   Immediately afterward, as the parties were going in the same direction along a public street, the quarrel was renewed.   The defendant stopped, alighted from his buggy, tied his horse by the roadside, and removed his hat and coat.   The plaintiff stopped his team, left his buggy, and removed his hat and coat.   The plaintiff said the defendant approached him in a threatening attitude, and that as soon as they were near enough they clinched and fell.   Other testimony was to the effect that they clinched before any blow was struck.   The defendant said the plaintiff struck him as soon as he could be reached, thereby delivering the technical "first blow" of the altercation, and his testimony was corroborated in this respect.   The succeeding conduct of the parties was characterized by perfect freedom from all hampering conventionalities.

Special attention was called to the question of an

agreement to fight by interrogatories propounded in the course of the introduction of the evidence, and special requests were duly made to the court by the plaintiff for instructions upon the law of mutual combat. These requests were refused and the following instructions were given :

"4. By the pleadings in this case the issues between the parties are well defined, and conditioned upon the contention of each party to the action, and I instruct you that in this case no question of law could be considered by you possibly upon any suggested theory that whatever of conflict or violence occurring between the parties was under and by virtue of any understanding, direct or indirect, or mutual agreement or consent between the parties that they should engage in a fight. Neither party is entitled to recover or defend in this case upon any such theory, the same being inconsistent with the contentions made by each in their pleadings."

"7. I instruct you further that if you believe from a preponderance of the evidence that the plaintiff did the first act of actual violence in the encounter in question, and that at the time the injuries complained of were inflicted the defendant actually believed that he was in immediate danger of receiving great bodily harm from the plaintiff, then the defendant had the right to resort to such means of defense as were within his reach, and in such case your verdict must be for the defendant."

Under the evidence the jury had the right to believe that each party voluntarily undertook to subdue the other by violence, taking the chances of receiving punishment himself ; that they mutually consented to a physical combat with the mutual purpose of doing each other hurt, and the mutual expectation of encountering force in return ; and that all injuries inflicted in the course of the contest were the product of this vicious animus of each participant toward his ad-

McNeil v. Mullin.

versary.   Such being the nature of the proof, it was consistent with the allegations of the plaintiff's petition in every particular.   There were an assault, a beating, a wounding and maiming, unlawful, malicious, and without just cause or provocation, precisely as alleged.

The plaintiff could not have made allegations more appropriate to the nature of his case than those contained in his petition.   He could have pleaded nothing to which the proof would have corresponded better. No further or broader allegations were necessary in order to include the facts disclosed by the evidence ; and the plea of justification contained in the answer could not limit the scope of the petition, or impose the defendant's theory of the case upon the plaintiff. Therefore, the fourth instruction to the jury misstated the effect of the pleadings in the case, and the law of mutual combat, so far as it was applicable to the evidence, should have been given in place of the seventh instruction.

If the parties fought by mutual consent the circumstance of who committed the first act of violence was immaterial ; and so long as each combatant persisted in his original determination to vanquish his antagonist the aggressions were mutual.   A resistance which has for its real object the securing of an opportunity to mangle the assailant is not legal self-defense ; and while it seems to be the law that, in a proper case, the jury may be required to follow the kaleidoscopic fortunes of a rough-and-tumble fight and determine whether, at a given moment of time, a finger was bitten off, or an eye was gouged, as a matter of self-protection rather than of attack ( see *Gutzman v. Clancy*, 114 Wis. 589, 90 N. W. 1081, 58 L. R. A. 744 ), they

are not obliged to take the striking of the first blow as the point of departure in a case of mutual combat.

Consent to engage in mutual combat may be inferred from circumstances. Conduct may have much more weight than profanity in determining the actual attitude of the parties toward each other, and the rules for ascertaining the true state of mind of brawlers who finally come to blows are not different from those applied in other cases.

If the encounter was the result of reciprocal desires to fight the conduct of each party was criminal. Each one was punishable at least for a breach of the peace, and for an assault and battery.

"It is no defense to Newland that Miles was a willing participant in the fight, and it would be no defense to Miles if he were being prosecuted for assault and battery that Newland was also willing for the fight. Take a strong illustration : Supposing these two parties had met and blows had passed between them, and then, stopping blows, they had agreed to fight a duel with pistols, and, measuring off the distance between them, each had taken a pistol and fired at the other ; now, whoever might have been the aggressor in the commencement of the quarrel, the willing participation of each in the duel, and the firing by each of his pistol with intent to kill, would make each guilty of an assault with intent to kill. So here, whichever may have been the aggressor when both were on horseback, the moment they jumped off and willingly engaged in a fist fight each became guilty of an assault and battery." (*The State v. Newland*, 27 Kan. 764, 769.)

Because it was a criminal enterprise his consent to participate in the melee does not deprive either party of his civil remedy against the other, and each is entitled to recover from the other all damages resulting from the injuries he received in the fight. Chief Jus-

tice Cooley, in his work on Torts (2d ed.), at page 187, states the law on this subject as follows :

"Consent is generally a full and perfect shield when that is complained of as a civil injury which was consented to. A man cannot complain of a nuisance the erection of which he concurred in or countenanced. He is not injured by a negligence which is partly chargeable to his own fault. A man may not even complain of the adultery of his wife which he connived at or assented to. If he concurs in the dishonor of his bed, the law will not give him redress, because he is not wronged. These cases are plain enough, because they are cases in which the questions arise between the parties alone.

"But in case of a breach of the peace it is different. The state is wronged by this, and forbids it on public grounds. If men fight, the state will punish them. If one is injured, the law will not listen to an excuse based on a breach of the law. There are three parties here, one being the state, which, for its own good, does not suffer the others to deal on a basis of contract with the public peace. The rule of law is therefore clear and unquestionable, that consent to an assault is no justification. The exception to this general rule embraces only those cases in which that to which assent is given is matter of indifference to public order ; such as slight batteries in play or lawful games, such unimportant injuries, as even when they constitute technical wrongs, may well be overlooked and excused by the party injured, if not done of deliberate malice. But an injury, even in sport, would be an assault, if it went beyond what was admissible in sports of the sort, and was intentional."

Sir Frederick Pollock, in his treatise on the subject of Torts, concurs fully in these views. (Poll. Torts, 157.) The consensus of judicial opinion, both in England and in the United States, has been, with but slight demur, to the same effect.

Lists of cases illustrating the doctrine may be found

in 3 Cyc. 1070 ; 2 A. & E Encycl. of L., 2d ed., 986 ; 4 Am. Dig., Cent. ed., Col 873 ; *Nilley v. Carpenter*, 64 Vt. 212, 23 Atl. 630, 15 L. R. A., 853 ; *Grotton v. Glidden*, 84 Me. 589, 24 Atl. 1008, 30 Am. St. Rep. 413.

There is some natural repugnancy to allowing damages to be recovered by a bullying blackguard who has courted a fight and has been soundly thrashed, but the law can indulge in no sentiment regarding the matter. It can concede no legal effect to his vicious purpose. His consent to fight must be treated as utterly void, and each party must be left to suffer all consequences, civil and criminal, of his reprehensible conduct.

Although the evidence fully warranted that it should be done, the jury were not allowed to apply the foregoing principles to the case under consideration. Therefore, the judgment of the district court is reversed, and the cause is remanded for a new trial.

All the Justices concurring.