Joseph Morris, appellee, v. Archie Miller, appellant.

Filed January 23, 1909. No. 15,460.

1. **Assault and Battery: Action for Damages: Instructions.** In an action for damages for an assault and battery, wherein it was claimed by each of the parties that the other was the aggressor, and by the defendant that what he did was in self-defense, it was not error for the court to instruct the jury, among other things, that the right of self-defense did not imply the right to attack, or to voluntarily enter into an affray, nor to use more force than was necessary for his defense, and that the question as to who provoked the difficulty or made the first assault was for the jury to decide under the evidence.

2. **Trial: Instructions: Construction.** In construing instructions upon any given proposition, all instructions bearing upon the same should be construed together as a whole.

3. **Assault and Battery: Right of Recovery.** Where two persons engage voluntarily in a fight either can maintain an action against the other to recover the actual damages for the injuries he may receive, and the fact that the combat was by agreement or mutual consent of the parties to it is no defense.

4. **————: Evidence.** Immediately after an encounter between plaintiff and defendant, the plaintiff's hat was picked up near where he fell, and was introduced in evidence upon the trial, showing a break or rent at a place which, when worn, would be over or near the point of injury upon plaintiff's head. The identity, condition and possession of the hat were shown by evidence preliminary to its introduction. *Held*, That the admission of the hat in evidence was not erroneous.

5. **Appeal: Harmless Error: New Trial.** After the conclusion of the instructions by the court to the jury, and upon the jury retiring from the courtroom to deliberate upon their verdict, one of the jurors, by mistake and inadvertence, picked up the hat which had been introduced in evidence and carried it into the jury room, where it remained until the next day, when it was removed by a bailiff and returned to the courtroom. The evidence adduced upon the motion for a new trial showed that the hat was taken by mistake, and that little, if any, attention was paid to it by the jurors; that it was upon the table around which the jurors assembled, and used as a ballot box a part of the time; that it was not used in any way for the purpose of influencing the minds of the jurors, and did not influence them. *Held*, That the taking of the hat to the jury room, under the circumstances, was an irregularity, but without prejudice to the defendant.

Appeal from the district court for Buffalo county: Bruno O. Hostetler, Judge. *Affirmed.*

*H. M. Sinclair* and *W. D. Oldham,* for appellant.

*C. A. Robinson, John A. Sheean* and *H. D. Rhea, contra.*

Reese, C. J.

This action was instituted in the district court for Buffalo county by plaintiff, Morris, and against defendant, Miller, for damages resulting from an assault and battery alleged to have been made and inflicted by defendant upon plaintiff. A jury trial was had, which resulted in a verdict in plaintiff's favor, upon which, after an adverse ruling upon a motion for a new trial, judgment was rendered, and from which defendant has appealed. The motion for a new trial and the assignments of error in this court consist of a number of alleged grounds, but none of them is urged in the briefs, except that there was error in the instructions given by the court to the jury, errors in the admission of evidence, and misconduct of the jury while deliberating upon their verdict. These contentions will be noticed in the order in which they are presented.

1. There is no contention that there was not an encounter between the parties at the time and place named in the petition, and there would seem to be no reasonable ground to contend that plaintiff was not seriously injured in the conflict. It is claimed by defendant, both in his answer and upon the witness stand, that whatever injury plaintiff sustained was inflicted by defendant in the legal and reasonable defense of his person from an attack made by plaintiff. In support of this it is urged that the injury suffered by plaintiff was the result of a fall by him against a hitching post in front of a business house in the village of Elm Creek, and through which post was a bolt to which a ring was attached, and that the bolt protruded through and beyond the side of the post opposite the ring and

against which plaintiff fell, inflicting the wound upon his head of which complaint is made, and that the fall was occasioned by a blow given by defendant with his left hand, but which was of no greater force than was reasonably necessary for defendant's protection and defense. It was also claimed that the personal conflict was voluntarily entered into by the parties, and that defendant should not, under the circumstances, be held responsible for the resultant injury. Upon the other hand, it was claimed by plaintiff that defendant was the aggressor, and that the assault which led to the conflict was by him. Upon this part of the case the court gave the following instruction, numbered 9, and to which defendant excepted: "The court instructs the jury that the defendant alleges that he acted in self-defense. You are instructed that the law does not permit a person to voluntarily seek or invite a combat or put himself in the way of being assaulted, so that when hard pressed he may have a pretext to injure his assailant. The right of self-defense does not imply the right of attack, and it will not avail in any case where the difficulty is sought for and induced by the party by any wilful act of his, or where he voluntarily and of his own free will enters into it. The necessity, being of his own creation, shall not operate to excuse him. Nor is any one justified in using more force than is reasonably necessary to get rid of his assailant. But, if he does not bring on the difficulty, nor provoke it, nor voluntarily engage in it, he is not bound to flee to avoid it, but may resist with adequate and necessary force until he is safe. Now, if you believe from the evidence in this case that the defendant voluntarily sought or invited the difficulty in which plaintiff was injured, if you believe from the evidence that he was injured, or that he provoked or commenced or brought it on by any wilful act of his own, or that he voluntarily or of his own free will engaged in it, then and in that case you are not authorized to find for him upon the ground of self-defense. In determining who provoked or commenced the difficulty or made the first

assault, you should take into consideration all the facts and circumstances in evidence before you." ·

The jury were quite fully instructed upon the different phases of the case, and, with one other exception, to be hereafter noted, no complaint is made of instructions given. As it is the well-established rule that all instructions given should be considered and construed together, we refer to instruction numbered 10, to which no complaint is made, and which we here set out: · "The court instructs the jury that, if you believe from the evidence that plaintiff began the affray and was the aggressor, then you are instructed that the defendant had a right to defend himself from such assault, and he would have the right to use that amount of force which was reasonably and apparently necessary in making his defense. And if you believe from the evidence that the defendant was so acting in self-defense from a real and honest ·conviction of apparent danger, or what would seem apparent danger to a reasonable man, you will return a verdict for the defendant, unless you further believe from the evidence that the defendant unlawfully used a degree of force and violence upon the plaintiff that was not reasonably and apparently necessary under the facts and circumstances then and there surrounding the defendant."

These instructions correctly state the law. The evidence clearly and conclusively establish the fact that the parties were in a business house in Elm Creek, and that there was a difference or quarrel between them. As to the extent of the anger displayed by each of them, the evidence is conflicting; but all agree that plaintiff left the building through the front door closely followed by defendant, both crossing the sidewalk into the street, but to only a few feet beyond the outer edge of the sidewalk, and the conflict was immediately entered upon. Just which one made the first attack may be in some doubt, as each one places the blame upon the other. It is claimed by plaintiff that defendant made the first attack and struck him in the forehead with some deadly instrument

by which the wound was inflicted, while defendant claims he did not make the attack, but acted solely in the defensive, using only his fist, and by which the wound complained of could not have been inflicted. When we consider these contentions, we can see no objection to the instruction complained of as being to defendant's prejudice. If it is true, as claimed by plaintiff, that defendant sought or invited the combat, and made use of a dangerour instrument by which the injury was inflicted, or that he created the occasion in order to inflict it, or did intentionally inflict it, the instructions cannot be said to be misleading, or to misstate the law. They properly left the whole question for the consideration of the jury under "all the facts and circumstances in evidence" before them.

The next instruction of which complaint is made is numbered 11, and is as follows: "You are instructed that, if you believe from the evidence that plaintiff and defendant voluntarily and by agreement entered into a fight, still I charge you that such agreement, if made, was unlawful, for the reason that such agreement, if made, would be in violation of the laws of the state and void, and such agreement, if made, would not be any defense to this action." This instruction was given as applicable to the contention that the fight or combat was entered into voluntarily and by mutual agreement, and that the unsuccessful party to the strife could not transfer his cause from the street to the courts, and recover damages for whatever injury he might sustain by reason of the prowess or activity of his adversary. At the time of the argument of the case at the bar of this court, the writer was of the opinion that the giving of the instruction might have been erroneous, but more mature reflection and an examination of the authorities have led to a different conclusion. It is true that an instruction of this kind would be condemned by some reputable authorities, among which are *Galbraith v. Fleming,* 60 Mich. 403, and *Smith v. Simon,* 69 Mich. 481; but it is quite clear

that the great weight of authority is the other way, and that the recognized rule is that, where two parties fight voluntarily, either party may recover from the other the actual damages suffered, and the consent of the plaintiff to engage in the combat will not bar his suit to recover. In jurisdictions where punitive damages are allowed, the consent will prevent the allowance of such damages, but will not prevent recovery for the actual loss or damage.

In referring to the rule that one cannot recover for an injury to the infliction of which he has consented, the supreme court of Ohio, speaking through Judge Marshall, in *Barholt v. Wright,* 45 Ohio St. 177, say: "But as often as the question has been presented, it has been decided that a recovery may be had by a plaintiff for injuries inflicted by the defendant in a mutual combat, as well as in a combat where the plaintiff was the first assailant, and the injuries resulted from the use of excessive and unnecessary force by the defendant in repelling the assault. These apparent anomalies rest upon the importance which the law attaches to the public peace, as well as to the life and person of the citizen. From considerations of this kind it no more regards an agreement by which one man may have assented to be beaten, than it does an agreement to part with his liberty and become the slave of another. But the fact that the injuries were received in a combat in which the parties had engaged by mutual agreement may be shown in mitigation of damages.   *   *   *   This, however, is the full extent to which the cases have gone"—citing cases.   In *Grotton v. Glidden,* 84 Me. 589, it is said: "The evidence satisfies us that the plaintiff's injuries were received while he and the defendant were engaged in a voluntary fight. The defendant contends that he acted only in self-defense. But the evidence satisfies us that the fight was voluntary on the part of both parties. This brings us to the question whether, if two persons engage voluntarily in a fight, either can maintain an action against the other to recover damages for the injuries he may receive. We

think he can. It seems to be settled law that each may maintain an action against the other. It is familiar law that each may be punished criminally. And it seems to be equally well settled that, by the rules of the common law, each may have an action against the other and recover full damages for all the injuries he received. The fact that the fight was voluntary is admissible in evidence, as are many other facts, to keep down the amount of punitive damages, but not to reduce the actual damages"—followed by citations and extracts from a number of cases. The rule is also recognized and stated in *Willey v. Carpenter,* 64 Vt. 212, annotated in 15 L. R. A. 853; *Shay v. Thompson,* 59 Wis. 540; *McNeil v. Mullin,* 70 Kan. 634; *Adams v. Waggoner,* 33 Ind. 531; *Jones v. Gale,* 22 Mo. App. 637; *Bell v. Hansley,* 48 N. Car. 131. See, also, 1 Cooley, Torts (3d ed.), p. 282, and 3 Cyc. 1070. In *McNatt v. McRae,* 117 Ga. 898, 45 S. E. 248, which was an action for an assault and battery, it was held that cross-actions in favor of each party against the other may arise out of the same affray, and such claims for damages may be presented in separate suits, or in a petition by one and a plea of set-off by the other.

We therefore find no error in the instructions complained of.

2. It is insisted that the court erred in permitting a hat, which plaintiff claims to have worn at the time of the encounter, to be put in evidence. It is said that the hat introduced had a hole or rent at or about the point where plaintiff was wounded; that the hat was on his head at the time; and it was claimed that the break or rent in the hat showed that it could not have been made with the fist of defendant, and from this it was argued that some heavy and dangerous instrument was used by defendant in striking the blow. The claim is that there was not sufficient preliminary proof of the identity of the hat, or that it was presented in the same condition as when found, to permit its submission to the jury. The hat introduced was shown to be the property of plaintiff

and upon his head at the time of the encounter; that it was picked up at the place where plaintiff had fallen, and had been preserved in its present condition from that time to the time of its introduction. We can detect no error in the action of the court in that behalf.

3. The next contention is upon the ground of misconduct of the jury with reference to the hat above alluded to. From the evidence submitted upon the hearing of the motion for a new trial it appears that, when the jury retired from the courtroom for the consideration of their verdict, one of the jurors, presumably by mistake and inadvertence, picked up the hat in question and carried it to the jury room, where it remained until the forenoon of the next day, when it was returned to the courtroom by a bailiff; that practically no attention was paid to it in the jury room; that it attracted little or no attention while there; that it had no influence on the verdict of the jurors; and that during a part of the time it was upon the table, around which the jurors were gathered, and was used as a ballot box into which the jurors placed their ballots when voting. There is no suggestion that the removal of the hat to the jury room by the juror who took it there was with any evil or corrupt intent, or that it was there used for any improper purpose, or, indeed, any purpose which could influence the deliberations of the jury, or have any effect upon the result thereof. That the taking of the hat to the jury room was an irregularity is perhaps true, and would not have occurred had the attention of the court, counsel, or juror been called to the fact. But, as the act was an innocent mistake, without wrongful intention, and as it is shown beyond question that no use was made of the hat by the jury which could in any way affect or influence the minds of the jurors or work any injury to defendant, we must hold that it was without prejudice to him and affords no ground for a reversal of the judgment. Code sec. 145.

Finding no reversible error in the record, it follows

18

that the judgment of the district court must be affirmed, which is done.

AFFIRMED.