[No. 22490. *En Banc.* December 29, 1930.]

DEAN E. HART, *as Administrator, Appellant,* v. CECIL
GEYSEL *et al., Respondents.*[1]

*Bell, McNeil & Bowles* (*J. Speed Smith* and *Henry
Elliott, Jr.,* of counsel) for appellant.

*Caldwell & Lycette, Eggerman & Rosling, A. C. Van
Soelen, Bruce MacDougall,* and *Todd, Holman &
Sprague,* for respondents.

MAIN, J.—This action was brought by the administrator of the estate of Hamilton I. Cartwright, deceased, who died as the result of a blow received in a prize fight. To the amended complaint, which will be referred to as the complaint, each of the defendants interposed a demurrer, which was sustained. The

[1] Reported in 294 Pac. 570.

plaintiff refused to plead further and elected to stand upon the complaint. A judgment was entered dismissing the action, from which the plaintiff appeals.

February 5, 1929, Hamilton I. Cartwright and Cecil Geysel engaged in a prize fight in the city of Seattle, during which Cartwright received a blow which caused his death. In the complaint there are no facts showing that the mutual combat was engaged in in anger, that there was malicious intent to seriously injure, or that there was excessive force.

 The controlling question is whether the action can be maintained for wrongful death when the encounter, though unlawful, was entered into with the consent of both parties. Section 2556, Rem. Comp. Stat., makes prize fighting unlawful, and provides that one engaging therein shall be guilty of a gross misdemeanor, with a proviso which is not here material.

The administrator has no greater rights pertaining to a recovery of damages than would the deceased have had, had he lived and brought an action for any injuries that he may have received. *Ostheller v. Spokane & Inland Empire R. Co.,* 107 Wash. 678, 182 Pac. 630.

Upon the question stated, the adjudicated cases, as well as the text writers, are in conflict. One line supports what is known as the majority rule, and the other, the minority. The majority rule has been stated as follows:

"Where the parties engage in mutual combat in anger, each is civilly liable to the other for any physical injury inflicted by him during the fight. The fact that the parties voluntarily engaged in the combat is no defense to an action by either of them to recover damages for personal injuries inflicted upon him by the other."

This rule is supported by the cases of *Willey v. Carpenter*, 64 Vt. 212, 23 Atl. 630, 15 L. R. A. 853; *Adams v. Waggoner*, 33 Ind. 531, 5 Am. St. 230; *Barholt v. Wright*, 45 Ohio St. 177, 12 N. E. 185, 4 Am. St. 535; *McNeil v. Mullin*, 70 Kan. 634, 79 Pac. 168; *Morris v. Miller*, 83 Neb. 218, 119 N. W. 458, 131 Am. St. 636, 20 L. R. A. (N. S.) 907; *Colby v. McClendon*, 85 Okl. 293, 206 Pac. 207, 30 A. L. R. 196; *Royer v. Belcher*, 100 W. Va. 694, 131 S. E. 556; *Littledike v. Wood*, 69 Utah 323, 255 Pac. 172.

The minority rule has been stated as follows:

"Where parties engage in a mutual combat in anger, the act of each is unlawful and relief will be denied them in a civil action; at least, in the absence of a showing of excessive force or malicious intent to do serious injury upon the part of the defendant."

The cases of *White v. Whittall*, 113 Mich. 493, 71 N. W. 1118; *Smith v. Simon*, 69 Mich. 481, 37 N. W. 548; *McNeil v. Choate*, 197 Ky. 682, 247 S. W. 955; *Lykins v. Hamrick*, 144 Ky. 80, 137 S. W. 852; *Wright v. Starr*, 42 Nev. 441, 179 Pac. 877, support this rule.

With reference to the two rules, after reviewing the authorities, the supreme court of Oklahoma, in the comparatively recent case of *Colby v. McClendon*, 85 Okl. 293, 206 Pac. 207, said:

"This court has never passed upon the question, but it seems that the majority rule is supported by the best reasoning. We think it should be followed in a case where the parties enter into a mutual combat with deadly weapons. The minority rule is announced in cases where the injury resulted from fist fights, although the case of *Lykins v. Hamrick*, 144 Ky. 80, 137 S. W. 852, was where parties were engaged in a cutting scrape. We think it would be against public policy to apply the minority rule in a case where persons enter into a mutual combat with deadly weapons."

In each of the cases which support the majority rule, the combat was entered into in anger, with a malicious

intent to seriously injure, and in some of them the question of excessive force was present as bearing upon the question of damages. In the cases which support the minority rule, the encounter, or fist fight, as it may be called, was entered into in anger, from which it would be necessarily inferred that there was an intent to do injury.

The majority rule carries into a civil action, where one party sues the other for damages for something which has been done in violation of positive law, the principle applied in criminal prosecutions by the state to the effect that the consent of one or both of the parties does not prevent such a prosecution. The minority rule does not apply this principle when a civil action is brought by one of the parties against the other for damages which have been sustained in a combat consented to by both parties, but which was in violation of positive law. The authorities supporting the majority rule recognize that if the thing done is not one prohibited by positive law, for which a penalty is imposed, then consent is a complete defense in a civil action for damages. The majority rule is an exception to two generally well recognized and accepted principles of law: (a) That one who has consented to suffer a particular invasion of his private right has no right to complain; and (b) that no one shall profit by his own wrongdoing. The minority rule recognizes and applies these principles.

The facts in the case now before us do not bring it within the authorities supporting the majority rule, because here there are no facts which show anger, malicious intent to injure, or excessive force. It may be stated that the facts of this case do not contain one element of the minority rule, that of anger. It is unnecessary, as we view it, in the present case to adopt either rule. It is sufficient to say that in our opinion

one who engages in prize fighting, even though prohibited by positive law, and sustains an injury, should not have a right to recover any damages that he may sustain as the result of the combat, which he expressly consented to and engaged in as a matter of business or sport. To enforce the criminal statute against prize fighting, it is not necessary to reward the one that got the worst of the encounter at the expense of his more fortunate opponent. This view is supported by the rule tentatively adopted by the American Law Institute in the Restatement of the Law of Torts, and is discussed in American Institute Treatise No. 1 (a) Supporting Restatement No. 1, Torts, chapter V, § 75, beginning at page 172, 1925. In part it is there said:

"Notwithstanding the numerical weight of authority against the view that an assent to a breach of the peace is a legally effective consent to such invasions of interest of personality as are involved therein the minority view is preferred for the following reasons:

"1. The majority view is obviously an exception to the general principle that one who has sufficiently expressed his willingness to suffer a particular invasion has no right to complain if another acts upon his consent so given. The very nature of rights of personality, which are in freedom to dispose of one's interests of personality as one pleases, fundamentally requires this to be so. There is a further principle, applicable not only in tort law but throughout the whole field of law, and perhaps more conspicuously in other subjects, to the effect that no man shall profit by his own wrongdoing.

"The majority view is an exception to both of these two fundamental principles. Clearly if a plaintiff has consented to being struck by another in the course of a brawl, his right to the control of his person and to determine by whom and how it shall be touched has not been invaded. And it is equally clear that if he has so expressed his consent to the blow that, were he not party to a breach of the peace, his assent would be an operative consent and so bar his liability, he is

profiting by the illegality of his conduct if because he is party to the breach of the peace he gains a right of action, which but for his criminal joinder therein he would not have had.

"The majority view, being, as it is, an exception to two such otherwise universal principles of law, can be sustained only if it is founded upon authorities which were not only based upon sound reason when announced but which are based upon reasons which still remain sound and convincing, or if the exception is one which is required to carry into effect some weighty public policy."

In the opinion in the case of *Milam v. Milam,* 46 Wash. 468, 90 Pac. 595, neither of the above rules was mentioned or discussed, and we do not regard that case as controlling. There is some language in it which leads to the belief that it was decided on the theory of excessive force.

The appellant cites a number of cases which hold that consent to an abortion by a patient is no defense to a subsequent action for damages against the doctor for performing the operation in a negligent manner, but if that be the rule in such cases it is not necessarily applicable to the facts now before us. We here distinctly do not express any opinion upon whether consent to an abortion precludes a right of recovery for the negligent act of the doctor in performing the operation.

The judgment will be affirmed.

MITCHELL, C. J., PARKER, TOLMAN, BEALS, MILLARD, and BEELER, JJ., concur.

HOLCOMB, J. (dissenting)—I am unable to concur in the prevailing opinion because it is contrary to the better reasoning as stated in what is called the majority rule, is contrary to public policy, and sets a bad precedent.

The first error contained in the prevailing opinion is that there are no facts in the complaint showing that the mutual combat was engaged in in anger, that there was malicious intent to seriously injure, or that there was excessive force. If excessive force be necessary as an element of recovery in a case where a mutual combat was voluntarily engaged in, the complaint alleges it in the following language:

". . . the said Cecil Geysel, having engaged and while engaged in the said unlawful encounter with the said Hamilton I. Cartwright, continued fighting with the said Hamilton I. Cartwright and did unlawfully and unjustifiably assault, strike, beat and injure the said Hamilton I. Cartwright, and did strike the said Hamilton I. Cartwright so cruelly and with such force and violence as to knock him down and cause him to fall upon the floor, from which said assault, striking, beating and blows, and from the injuries received from the falling the said Hamilton I. Cartwright died."

The foregoing certainly was an allegation of excessive force and brings the case squarely under our own decision in *Milam v. Milam*, 46 Wash. 468, 90 Pac. 595, which is distinguished in the majority opinion upon the ground that it was decided on the theory of excessive force. The principal contention in the *Milam* case, as shown by the briefs filed therein, was that the affray in that case was mutual and voluntary and, therefore, the act committed was not done against the will of the party assaulted. Unless this court intended to deny that proposition, there could be no recovery even when excessive force appears, just as in the present case.

For once, I am unable to agree with either the reasoning or conclusions arrived at tentatively by the American Law Institute in its Restatement of the Law, reference to which is made in the majority opinion, as being the better reasoning and the better principle to

follow in deciding this case. I admit that ancient precedents should not govern where they are bad. One ancient case criticized in the Restatement, *supra,* was that of *Matthew v. Ollerton,* Comerbach 218, 90 Eng. Reprint 438, which is said to be a mere dictum stating:

". . . if a man license another to beat him, such license is void as it is against the peace."

This dictum, it is said, was followed in a more modern case, *Boulter v. Clark,* Buller's Nisi Prius, 16, where the presiding judge ruled that, the fighting being unlawful, the consent to fight, if proved, would not bar the plaintiff.

Although that may be but dictum and of faulty, human origin, there is ancient and Divine authority in the Mosaic law:

"And if men strive together, and one smite another, with a stone, or with his fist and he die not but keepeth his bed; if he rise again, and walk about upon his staff, then he that smote him be quit; only he shall pay for the loss of his time and shall cause him to be thoroughly healed." Exodus XXI:18, 19.

See, also, *Adams v. Waggoner,* 33 Ind. 531, 5 Am. Rep. 230, *McNeil v. Mullin,* 70 Kan. 634, 79 Pac. 168; *Willey v. Carpenter,* 64 Vt. 212, 23 Atl. 630, 15 L. R. A. 853, *Littledike v. Wood,* 69 Utah 323, 255 Pac. 172.

Our statute, Rem. Comp. Stat., § 2556, makes prize fighting unlawful. Hence, there could be no lawful consent to such a combat. Physical combats are against the peace, anyway. Had it been a duel, it would have been unlawful, and consent to fight a duel would not prevent recovery by either those injured, on the ground of excessive force, or the heirs or personal representatives of those injured.

The reasoning of Judge Cooley is, to my mind, greatly superior to the reasoning employed in the Re-

statement of the Law on Torts. Judge Cooley reasons as follows, Cooley on Torts (3d Ed.), p. 282:

"It is implied, in an assault or battery, that it is committed against the assent of the person assaulted; but there are some things a man can never assent to, and therefore his license in such cases can constitute no excuse. He can never consent, for instance, to the taking of his own life. His life is not his to take or give away; it would be criminal in him to take it, and equally criminal in any one else who should deprive him of it by his consent. The person who, in a duel, kills another, is not suffered to plead the previous arrangements and the voluntary exposure to death by agreement, as any excuse whatever. The life of an individual is guarded in the interest of the State, and not in the interest of the individual alone; and not his life only is protected, but his person as well. Consent cannot justify an assault.

"But suppose, in the duel one is not killed, but only wounded; may he have an action against his adversary for this injury? If there is any reason why he may not, it must be because he has consented to what has been done. *Volenti non fit injuria.* But if he had no right or power to consent, and the consent expressed in words was wholly illegal and void, the question then is, how a consent which the law forbids can be accepted in law as a legal protection?

"Consent is generally a full and perfect shield when that is complained of as a civil injury which was consented to. . .

"But in case of a breach of the peace it is different. The State is wronged by this, and forbids it on public grounds. If men fight, the State will punish them. If one is injured, the law will not listen to an excuse based on a breach of the law. There are three parties here, one being the State, which, for its own good, does not suffer the others to deal on a basis of contract with the public peace. The rule of law is therefore clear and unquestionable, that consent to an assault is no justification. Where a combat involves a breach of the peace, the mutual consent of the parties thereto is to be regarded as unlawful, and as not de-

priving the injured party, or, for that matter, each injured party, from recovering damages for injuries received from the unlawful acts of the other.''

See, also, 1 Jaggard on Torts, p. 203, to the same effect.

I am convinced the complaint stated a cause of action under the correct principles of law and the judgment should be reversed.

FULLERTON, J., concurs with HOLCOMB, J.