[S. F. No. 17807. In Bank. Mar. 22, 1949.]

GUY C. HUDSON, a Minor, etc., et al., Appellants, v. ORVILLE CRAFT et al., Respondents.

Young, Ryan & Whitton and Albert K. Whitton for Appellants.

Appelbaum & Mitchell and John Jewett Earle for Respondents.

CARTER, J.—Plaintiffs appeal from a judgment of dismissal, because of their failure to amend their complaint, after a demurrer thereto was sustained with leave to amend.

Plaintiff (the reference herein will be to the one plaintiff, the other one being his father who makes a claim for hospital and medical expenses) alleges that he is 18 years of age; that defendants were conducting a carnival where one of the concessions, for which a separate admission fee was charged, consisted of boxing exhibitions; that such concession was conducted in violation of section 412 of the Penal Code, and the Business & Professions Code (chap. 2 of div. 8) in that prizes and prize money were given to contestants and no license to conduct the same had been obtained from the State

Athletic Commission, and they were not conducted in accordance with the rules of the commission; that plaintiff, on the solicitation of defendants, and a promise of receiving $5.00, engaged in a boxing match and suffered personal injuries as the result of being struck by his opponent. Plaintiff's opponent in the match was also made a party defendant but was not served with process.

The basis and theory of liability, if any, in mutual combat cases has been the subject of considerable controversy. Proceeding from the premise that, as between the combatants, the tort involved is that of assault and battery, many courts have held that, inasmuch as each contestant has committed a battery on the other, each may hold the other liable for any injury inflicted although both consented to the contest. (*McCulloch* v. *Goodrich*, 105 Kan. 1 [181 P. 556, 6 A.L.R. 386]; *Grotton* v. *Glidden*, 84 Me. 589 [24 A. 1008, 30 Am.St.Rep. 413]; *Stout* v. *Wren*, 8 N.C. 420 [9 Am.Dec. 653]; *Colby* v. *McClendon*, 85 Okla. 293 [206 P. 207, 30 A.L.R. 196]; *Littledike* v. *Wood*, 69 Utah 323 [255 P. 172]; *Wood* v. *McKeever*, 141 Kan. 323 [41 P.2d 989] (doubts McCulloch case); *Strawn* v. *Ingram*, 118 W.Va. 603 [191 S.E. 401]; *Morris* v. *Miller*, 83 Neb. 218 [119 N.W. 458, 131 Am.St.Rep. 636, 17 Ann.Cas. 1047, 20 L.R.A.N.S. 907]; *Teeters* v. *Frost*, 145 Okla. 273 [292 P. 356, 71 A.L.R. 179]; *Churchill* v. *Baumann*, 95 Cal. 541 [30 P. 770]; dictum; Cooley on Torts (4th ed.) § 92; 24 Col.L.Rev. 819; 22 Minn.L.Rev. 546; 79 U.Pa.L.Rev. 509; 6 A.L.R. 388; 30 A.L.R. 199; 47 A.L.R. 1092). Being contrary to the maxim *volente non fit injuria* (Civ. Code, § 3515), the courts have endeavored to rationalize the rule by reasoning that the state is a party where there is a breach of the peace, such as occurs in a combat, and that no one may consent to such breach. There are cases expressing a minority view and severe criticism has been levelled at the majority rule, such as, that it ignores the principle of *pari delicto* and encourages rather than deters mutual combat. (See *Hart* v. *Geysel*, 159 Wash. 632 [294 P. 570]; 22 Minn.L.Rev. 546; Bohlen, *Consent as Affecting Civil Liability for Breaches of the Peace*, 24 Col.L. Rev. 819; 79 U.Pa.L.Rev. 509; 17 Va.L.Rev. 374; Prosser on Torts, p. 124; 6 A.L.R. 388; 30 A.L.R. 199; 47 A.L.R. 1092). The Restatement adopts the minority view. An assent which satisfies the rules stated "prevents an invasion from being tortious and, therefore. actionable, although the invasion assented to constitutes a crime." (Rest., Torts, § 60). An example given thereunder is a boxing match where no

license was had as required by law. The only case discovered involving the liability of a third party-promoter of the combat, such as we have in the case at bar, is *Teeters* v. *Frost, supra,* where the court, following the majority position as to the liability of the participants as between themselves, was not confronted with any difficulty in deciding that the instigator was liable as an aider and abetter.

There is an exception to the rule stated in the Restatement, reading: ''Where it is a crime to inflict a particular invasion of an interest of personality upon a particular class of persons, irrespective of their assent, and the policy of the law is primarily to protect the interests of such a class of persons from their inability to appreciate the consequences of such an invasion, and it is not solely to protect the interests of the public, the assent of such a person to such an invasion is not a consent thereto.'' (Rest., Torts, § 61.) (See also Prosser on Torts, pp. 124-5, and cases cited.) It is evident that the so-called exception and the foregoing discussion has to do only with consent as refuting liability, not with the basic tort upon which the liability is rested, assault and battery. Concerning the bearing of the factor of consent or assumption of risk on liability, the instant case, as will more fully appear from the later discussion herein, clearly falls within the exception stated in section 61 (*supra*) by reason of the declared public policy of the state.

If liability is predicated on the tort of battery, it might seem to follow that in order to hold the promoter liable, it would be necessary to impose responsibility upon the combatants as to each other on the theory that they are the principals while the instigator is only the aider and abetter. In view of the public policy of this state as expressed by initiative, legislation, rules of the Athletic Commission, and the Constitution, the promoter must be held liable as a principal regardless of what the rule may be as between the combatants.

From the beginning, this state has taken an uncompromising stand against uncontrolled prize fights and boxing matches. The first session of the Legislature condemned prize fighting and made it a felony. (Stats. 1850, p. 233, § 44.) The same provision somewhat enlarged in scope was made a part of the original Penal Code in 1872 (Pen. Code, § 412.) A similar act was passed in 1893 (Stats. 1893, p. 101) which was superseded by an amendment to section 412 of the Penal Code in 1899 (Stats. 1899, p. 153). That amendment contained more

comprehensive language prohibiting prize fights and boxing matches, but authorized sparring exhibitions in incorporated clubs where a license was obtained, the number of rounds and weight of the gloves were limited and a physician was in attendance. The section was again amended in 1903 to require such sparring matches to be conducted in accordance with rules to be adopted by the local legislative bodies (Stats. 1903, p. 409). By initiative measure in 1914, section 412 was again amended (Stats. 1915, p. 1930) and has remained the same since then. It goes into detail prohibiting prize fights and boxing matches or exhibitions and reaches all persons connected therewith. It does allow "amateur boxing exhibitions" when no prize is received, but there is a maximum of four rounds of three minutes each, with a minute intermission. The weight of the gloves is fixed and they must be properly padded. Peace officers are required to stop such exhibitions if the contestants are unevenly matched or there is a danger of either of them being seriously injured.

In 1924, an initiative measure was adopted (Stats. 1925, p. LXXXIX; now Bus. & Prof. Code, §§ 18600-18782) whereby a State Athletic Commission is created with power to supervise and regulate all boxing matches and all phases of such activity are covered, as appears later herein. In 1942, a section was added to the Constitution by which "The Legislature may provide for the supervision, regulation and conduct . . . of boxing and sparring matches or exhibitions; provided, that no boxing or sparring match or exhibition shall be of more than 12 rounds in length, such rounds to be of not more than three minutes for each round, except that championship matches may, if the approval of the State Athletic Commission is first obtained, be 15 rounds in length, such rounds to be on not more than three minutes duration each. . . .

"The Legislature in the exercise of the power granted herein may amend, revise, or supplement any part of that certain initiative act approved by the electors November 4, 1924, . . .

"The Legislature shall, however, have no power to take away the effect of the provisions of the initiative act hereinabove cited which allow wrestling and 12-round boxing contests in the State of California. The repeal either in fact or effect of the sections of the above cited act shall rest entirely in the hands of the people of the State of California as heretofore." (Cal. Const., art. IV, § 25¾.) The Business and Professions Code based on the 1924 initiative act compre-

hensively regulates boxing and prize fighting. It defines a professional boxer, as one who competes for a money prize (Bus. & Prof. Code, § 18602). An amateur boxing contest is one where there is no prize money (*Id.*, § 18603). No boxing match may be held except as provided therein and the commission has the direction and control of them. (*Id.*, § 18670.) The commission may license clubs, participants and assistants to be employed in exhibitions and a license is required. (*Id.*, § 18673.) No person under 18 may participate in the matches. (*Id.*, § 18734.) Participants must be examined by a physician immediately before the contest. (*Id.*, § 18734.) A maximum number of rounds and minimum weight for gloves are fixed. (*Id.*, §§ 18736, 18737, 18739, 18741.) The gloves must be properly padded (*Id.*, § 18738.) There must be a physician in attendance at the match and he must certify to the contestants' physical condition. (*Id.*, § 18742.) A referee must supervise the match and stop it if there is too great a disparity between the boxers. (*Id.*, § 18745.) Conduct of matches without a license is a misdemeanor. (*Id.*, § 18780.) The commission may adopt rules and regulations for the conduct of contests. (Pen.. Code, § 412.) Along the same lines, the regulations adopted by the commission are comprehensive and in detail. They provide for limits on the variation in weight between the contestants; for the size and padding of the ring; for what blows constitute fouls which directly pertain to the avoidance of injury; and for numerous other things such as inspection and physical examination and the like. ,

The foregoing declarations by the people, the Legislature, and the commission evince an unusually strong policy, obviously resting upon a detailed study of the problems relative to boxing matches. While there are other purposes underlying that policy, it is manifest that one of the chief goals is to provide safeguards for the protection of persons engaging in the activity. It may be that the actual participants, as well as the promoter, are liable criminally for a violation of the provisions, but insofar as the purpose is protection from physical harm, the chief offender would be the promoter—the activating force in procuring the occurrence of such exhibitions. It is from his uncontrolled conduct that the combatants are protected. Secondarily, the contestants are protected against their own ill-advised participation in an unregulated match. This is especially true in the case at bar where plaintiff is a lad of 18 years.

The foregoing policy compels the conclusion that the promoter is liable where he conducts boxing matches or prize fights without a license and in violation of the statutory provisions above discussed, regardless of the rights as between the contestants, and that the consent of the combatants does not relieve him of that liability. Manifestly the doctrine of *pari delicto* is not pertinent inasmuch as one of the main purposes of the statutes is to protect a class (combatants) of which plaintiff is a member. (See 6 Cal.Jur. 157-159.) It may be observed that the basis of such liability finds some support in principle in the doctrine of negligence *per se* (see *Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581 [177 P.2d 279]; *Combs* v. *Los Angeles Railway Corp.*, 29 Cal.2d 606 [177 P. 2d 293]), and strict liability arising from the nature of the conduct and its consequences (see *Luthringer* v. *Moore*, 31 Cal.2d 489 [190 P.2d 1]), the seriousness of which is here established by a statute with comprehensive regulatory features aimed at the goal of especial protection for a certain class. The end result is the same and the controlling factor is whether or not the expressed public policy is sufficiently urgent, explicit and comprehensive. It has been held that a violation of an act making it a criminal offense to intercept and publish a telephone message could be the basis of a civil action (*Reitmeister* v. *Reitmeister*, 162 F.2d 691); that the employment of a minor without a permit in violation of the Child Labor Laws is a basis for civil responsibility for injuries received by the minor in such employment. (See *Beauchamp* v. *Sturges & Burns Mfg. Co.*, 250 Ill. 303 [95 N.E. 204]; *Krutlies* v. *Bulls Head Coal Co.*, 249 Pa. 162 [94 A. 459, L.R.A. 1915F, 1082]; *Blanton* v. *Kellioka Coal Co.*, 192 Ky. 220 [232 S.W. 614]; 35 Am.Jur., Master & Servant, § 133.) Other illustrations might be given. (See generally Rest., Torts, § 286; Prosser on Torts, pp. 271-274; 39 Yale L.J. 908; 46 Harv.L.Rev. 453, 472; 48 Col.L.Rev. 456.)

It is not necessary in the instant case to state a general rule inasmuch as each situation must have individual consideration. The nature and scope of the legislation here involved and above shown requires liability, especially when we consider that it calls for continuous and "on the spot" supervision of boxing matches. That feature alone is sufficient to distinguish it from such cases as a person operating a car without an operator's license and the like. Moreover, we have more here than the mere failure to obtain a license. While it could have been more accurately pleaded,

it may be inferred that the defendants did not comply with the statutes from the allegation that they failed to so comply therewith in that they did not obtain a license and did not observe the rules and regulations of the Athletic Commission.

We have no question in the instant case as to whether the failure of defendants to have a license or comply with the prize fight laws was the proximate cause of plaintiff's injury, (although defendants question the pleading), for the case is here on appeal from a judgment after a demurrer was sustained and it is alleged in the complaint: "That said plaintiff did engage in said boxing exhibition as solicited by said defendants and as a proximate result of said solicitation and in the course of same was violently struck in and about the face and body by the defendant Henry Moe, and as a proximate result thereof plaintiff suffered the following personal injuries, to-wit: . . ."

It is a wholly reasonable construction of the complaint that the "solicitation" referred to was the solicitation to engage in a match which was conducted without a license and contrary to the regulations provided by law, and that as a proximate result thereof plaintiff was injured. Liberally construing the complaint, as we should (*Speegle* v. *Board of Fire Underwriters*, 29 Cal.2d 34 [172 P.2d 867]), we do not believe that defendants' special demurrer (uncertainty, ambiguity, unintelligibility) on this point is sustainable.

Further, it is urged that the special demurrer for uncertainty and ambiguity was properly sustained in that it is not alleged which rules of the Athletic Commission were violated by defendants. But it appears from the complaint that defendants did not comply with any of the rules. Therefore, there is no necessity that they all be named. It is plain that plaintiff is charging that defendants wholly disregarded the prize fight and boxing regulations, whether found in the statutes or the commission's rules. Both of the defendants' claims with respect to its special demurrer are unfounded when we apply the rule of liberal construction and are able to say that defendants were sufficiently apprized of the issues to be met. (See *Lord* v. *Garland*, 27 Cal.2d 840 [168 P.2d 5].)

For the foregoing reasons the judgment is reversed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

EDMONDS, J.—I place my concurrence in the judgment upon grounds different from the quite indefinite pattern of liability outlined in the majority opinion.

According to the complaint, the minor was solicited by Craft and his associates to participate in a boxing match for a consideration of $5.00. He accepted the offer and in the bout, sustained personal injuries as the result of blows struck by his opponent. By other allegations, the pleading asserts that the boxing match, or exhibition, was conducted in violation of applicable statutes regulating prize fighting and directing that no boxing contest shall be conducted without a license from the Athletic Commission and in accordance with specified requirements.

The demurrer admits the truth of these facts and they state a cause of action for personal injuries suffered by an employee. In determining whether an employer-employee relationship exists, the most important factor is the right to control the manner and means of accomplishing the result desired. (*California Emp. Com.* v. *Los Angeles etc. News Corp.*, 24 Cal.2d 421 [150 P.2d 186]; *S. A. Gerrard Co.* v. *Industrial Acc. Com.*, 17 Cal.2d 411 [110 P.2d 377]; *Murray* v. *Industrial Acc. Com.*, 216 Cal. 340 [14 P.2d 301].) One may have the status of an employee although the employment is for a single performance. (*Drillon* v. *Industrial Acc. Com.*, 17 Cal.2d 346 [110 P.2d 64].) The fight in which Hudson participated was a part of the program offered at the circus for the entertainment of the public. It was held on the premises of the respondents and was subject to their management. The modesty of the consideration and the boy's youth are facts which may be taken into account, in connection with the use of the respondents' facilities and equipment, as indicating the degree of control exercised by them over him.

The facts stated by the complaint affirmatively show that although young Hudson was an employee, he was not subject to the workmen's compensation law and may maintain an action against his employer. Section 3351 of the Labor Code, which defines the persons entitled to compensation benefits provides: " 'Employee' means every person . . . whether lawfully or unlawfully employed. . . ." The purpose of the statute is to bring within its terms and make eligible for benefits persons whose employment violates laws relating to minors, work on Sunday, civil service, and the like. It does not include a person whose contract of employment is unlawful for the reason that it requires the employee to perform acts constituting a violation on his part of the express provisions of a penal statute. (*Massachusetts etc. Co.* v. *Industrial Acc. Com.*, 19 Cal.App.2d 583, 587 [65 P.2d 1349]; *Drakos*

v. *Makiwett*, 6 Cal. Compen. Cases 228 [1940] ; see 32 Cal.L. Rev. 289, 292.)

According to the facts pleaded by Hudson, his employment violated not only the requirements of the Business and Professions Code regulating boxing, but also constituted a violation of section 412 of the Penal Code, which declares that anyone engaging in a prize fight is guilty of a misdemeanor and shall be fined from $100 to $1,000 and be imprisoned in the county jail for a period of 30 days to one year. The rule is well established that an employer is under a duty to furnish safe working conditions for his employees. (*Devens* v. *Goldberg, ante,* pp. 173, 178 [193 P.2d 943] ; *Cordler* v. *Keffel,* 161 Cal. 475, 479 [119 P. 658].) Section 2800 of the Labor Code provides: ''An employer shall in all cases indemnify his employee for losses caused by the employer's want of ordinary care,'' and by the following section: ''It shall be conclusively presumed that such employee was not guilty of contributory negligence in any case where the violation of any law enacted for the safety of employees contributed to such employee's injury.'' By section 18670 et seq. of the Business and Professions Code, which requires strict supervision of the Athletic Commission, the presence of a physician, a limited number of rounds, padding and specified weight for gloves and relative equality in contestants' ability, the Legislature has established a standard of care for those persons who participate in boxing matches. The facts pleaded in the complaint sufficiently charge an employment which required the performance of the employee's duties under unsafe working conditions. With the further allegations in regard to the injuries sustained by the minor as a result of boxing under those conditions, a cause of action for damages is stated.