No. 31,718

L. V. Wood, *Appellant*, v. K. K. McKeever, *Appellee*.

(41 P. 2d 989)

Opinion filed March 9, 1935.

A. C. Malloy, Roy C. Davis, Warren H. White and Frank S. Hodge, all of Hutchinson, for the appellant.

Donald Muir, of Anthony, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This was a civil action for damages. Defendant shot the plaintiff, inflicting wounds and injuries from which he will never recover.

Plaintiff is a man of 48 years. In August, 1928, he obtained a written lease on a ranch of 600 acres known as the Lota McKeever ranch, in Harper county. The term was for three years, but plaintiff was permitted to overstay his term, and he was still in possession of the property on April 13, 1932, when the shooting occurred which gave rise to this lawsuit.

Defendant, K. K. McKeever, 62 years old, resided on a large ranch not far from the one leased and occupied by plaintiff. Defendant was one of two trustees appointed by the probate court to lease the Lota McKeever ranch. In March, 1932, defendant placed some cattle in plaintiff's pasture under some arrangement of no

present importance. Later some other parties sought to put some of their cattle into the plaintiff's pasture. This led to some wordy dispute between plaintiff and defendant. The latter reminded plaintiff of some delinquency in his payments of rent and declared he would take the pasture away from plaintiff. Shortly after noon on April 13, 1932, plaintiff went to the pasture for the avowed purpose of turning defendant's cattle out of it. Defendant appeared on horseback armed with a revolver. He was accustomed to carry such a weapon attached to his saddle. Plaintiff rounded up some of defendant's cattle to drive out of the pasture. Defendant placed himself and his horse at the gateway to head them off. This led to bitter words. Plaintiff reviled defendant as a coward for coming armed with a gun. Defendant drew his revolver and shot the plaintiff. The bullet shattered the breast bone, penetrated the lung and then passed through the left arm. Plaintiff fell from his horse. Defendant's testimony concerning this incident was that antecedent thereto he had urged plaintiff to let the law settle their dispute; that plaintiff had said he didn't need any law—

"When we got down in the corner of the pasture, where the cattle were, Wood started to ride on ahead as though he was going to open the gate, and I headed him off. . . . After we had got up to the cattle, he made the turn around behind me, as though he aimed to run the cattle through the gate. I told my dog to turn the cattle back, and the dog went behind and turned them east. . . . I said to him, 'Let these cattle alone.' He said, 'These cattle are going out.' Wood then reached around in front of him like he was after a gun. I did not see anything in his hand, but thought he was reaching for a gun. I reached into my saddle pocket and got my six shooter. I thought he had something in his hand, but didn't take time to look to see what he had. When I shot him, I thought it was necessary for my own safety. . . . Wood partly fell and partly got off of his horse on the left-hand side."

Defendant also testified that after plaintiff was shot he "made a run at defendant" with a hammer in his hand and threw it at defendant.

In a criminal prosecution which followed the foregoing incident, defendant was convicted of the crime of felonious assault under the crimes act (R. S. 21-434).

Plaintiff instituted this civil action for damages, pleading the material facts. Defendant's answer included a general denial and an allegation that plaintiff's injuries were augmented by his failure to care for them prudently.

Jury trial; evidence adduced at length; verdict and judgment for defendant; appeal.

The first matter urged in plaintiff's brief is a dissertation on the point that the evidence on behalf of defendant, if accepted as true, shows that plaintiff and defendant were engaged in mutual combat, the legal consequence of which would be to render defendant liable for any damages sustained by plaintiff. The case of *McCulloch v. Goodrich*, 105 Kan. 1, 181 Pac. 556, and earlier cases support the rule that persons consenting to and engaging in a mutual combat are liable reciprocally for injuries they may inflict on each other. Such was formerly the general rule of law, but present-day legal opinion has largely discarded it. (Restatement, Torts § 60, comment and illustrations.) However that may be, the matter is unimportant here, since no feature of the evidence tended to prove that the shooting and wounding of plaintiff occurred in or was the result of a mutual combat.

Appellant's next grievance is partly directed at the jury's disregard of what he considers the "clear and convincing" evidence. This point, however, presents nothing for appellate review. Included in this assignment is a complaint touching the trial court's refusal to set aside the verdict and grant a new trial; but this phase of the appeal can be dealt with more logically after some other errors urged on our attention are considered. One of these is based on the exclusion of evidence offered by plaintiff to rebut defendant's evidence in respect to the right of possession of the pasture at the time defendant shot the plaintiff. In his case in chief plaintiff had introduced his written lease of the pasture, which terminated August 1, 1931. He then attempted to show by oral testimony that he had been permitted to remain in possession for another year. This was excluded on defendant's objection thereto. The court's ruling reads:

"Objection sustained. I don't see that it cuts any figure if he was occupying it at the time."

Passing the question whether this ruling was correct or not, defendant was permitted to adduce evidence tending to show that plaintiff's right of occupancy of the pasture had terminated. The record reads:

Defendant testifying on direct examination:

"I had a conversation with Wood about March 14th [a month before the shooting]. He 'said he had decided to turn the pasture back to me.' . . .

"Wood came to my place about noon on April 13th. The first thing he

said was, 'How about the pasture?' . . . I said, 'Wood, you know the pasture is not for rent, and that you have turned it back to me.' He said, 'You want the pasture?' I said, 'Under our agreement you turned the pasture back, and I expect to keep the pasture.' "

Cross-examination:

"When the three-year lease on this Lota McKeever land was up in August, 1931, I asked Wood if he intended to hold it for another year, and he did not say anything."

On rebuttal, plaintiff tendered in evidence a letter from the co-trustee of the pasture, addressed to plaintiff's wife six days after the shooting, containing a statement of account against plaintiff, which among other matters read:

"He [plaintiff] has had the use of the pasture *for four years,* having taken over the pasture in 1928. This makes a total of $990, so deducting from this the total payments made, or $564.25, there shows an unpaid balance of $425.75 still due." [Italics ours.]

This evidence was objected to by counsel for defendant on the ground that—

"It hasn't a thing to do with the issues in this case.

"BY THE COURT: What is the purpose of this?

[COUNSEL FOR PLAINTIFF]: "The purpose of this is to show that he had this property leased at the time of this shooting, and up to August 1, 1932, according to the lease, and that there was no such arrangement as is claimed here by McKeever. The statement covers that period of time up to August 1, 1932. Covers the pasture.

"BY THE COURT: Objection sustained."

Counsel for plaintiff concede that the trial court's first ruling on the proffered evidence of plaintiff's right of possession of the pasture may have been correct—on the theory that at that stage of the trial his right thereto had not been controverted. But when defendant testified that plaintiff had renounced his right to the pasture, the rebuttal evidence inherent in the contents of the letter of the co-trustee which conceded that plaintiff was in possession of the pasture and was being charged therefor, was both pertinent and material, both in respect to plaintiff's possession and to his right of possession at the time he was shot by defendant. It is rather obvious, we think, that plaintiff's right of possession of the pasture and his consequent right to turn defendant's cattle out of it had an important bearing on the material issues of this case. Its significance on the question of defendant's alleged wrongdoing can hardly be controverted. While the trial court ruled in the first instance that plaintiff's possession or

right of possession "cuts no figure" in the case, defendant adduced evidence on the same subject, therefore plaintiff's rebuttal evidence which would have clinched his right of occupancy should not have been excluded. The fact that the cotrustee's letter was addressed to plaintiff's wife is unimportant. It was written six days after plaintiff was shot. Any correspondence relating to plaintiff's business affairs could not then receive his personal attention; and quite naturally the statement of account touching the rent due and related matters was addressed and submitted to Mrs. Wood. It seems to this court that the exclusion of this rebuttal evidence was erroneous and prejudicial. Indeed, the trial court, in our opinion, might quite properly have made short work of the question of possession by a ruling that plaintiff was in possession and had the lawful right of possession of the pasture as a tenant from year to year and also by acquiescence of the lessors of the property who had taken no lawful means to remove him.

Error is next assigned on the restrictions placed on the cross-examination of defendant to show a discrepancy between his testimony at his criminal trial and in this civil action. In this case defendant testified that just before he shot plaintiff that "Wood reached around in front of him like he was after a gun." In the criminal case he had testified:

"Q. Did he, Wood, seem to have something in his hand?  A. I did not take time to look."

While the extent of the cross-examination of witnesses is largely governed by the discretion of the trial court, a more searching cross-examination of a witness who is a party principal in the litigation is usually permitted; and in the instant case the plaintiff's complaint touching the restriction of the cross-examination seems well-founded. (*Brown v. Meyer*, 137 Kan. 553, 561, 21 P. 2d 368.)   In *Tawzer v. McAdam*, 134 Kan. 596, 603, 7 P. 2d 516, it was said:

"Where determination of the main issue of fact must largely depend upon the credence to be accorded to the testimony of a litigant who is the principal witness in his own behalf, a wider range of cross-examination should be allowed than is commonly permitted in the cross-examination of witnesses in general." (Syl. ¶ 2.)

Another error is based on the overruling of plaintiff's objection to the cross-examination of a witness for plaintiff. Defendant had produced evidence tending to show that plaintiff had the reputation of being a violent, turbulent and vindictive person. Plaintiff produced

witnesses in rebuttal who testified that his reputation as a peaceable law-abiding citizen was good. On cross-examination of one of these, John Latta, the record reads:

[COUNSEL FOR DEFENDANT]: "You said they were telling what a fine fellow he was. Were they standing around on the street corner and announcing it from the housetops so that everybody could hear it?

[COUNSEL FOR PLAINTIFF]: "We object to that as improper cross-examination.

"BY THE COURT: Overruled."

While plaintiff's objection might quite properly have been sustained, it can hardly be held that the ruling constituted prejudicial error.

Another error urged relates to the court's refusal to permit the plaintiff to bare his chest and arm before the jury so the doctor who attended to the wounds of plaintiff could more clearly describe the course and direction of the bullet. We discern nothing prejudicial under this assignment. A more debatable ruling was made when the court sustained defendant's objection to a question propounded to the doctor touching the painful character of a nerve injury such as the bullet wound had caused in plaintiff's arm. The objection was that the question was irrelevant and "that the witness hasn't shown himself qualified to answer." Both objections were bad. We do not find, however, that this erroneous ruling was reserved for presentation on the motion for a new trial as the code requires. (*Hunter v. Greer*, 137 Kan. 772, 22 P. 2d 489.)

Yet another complaint relates to alleged misconduct of certain jurors and of alleged tampering with the jury. On the motion for a new trial, testimony of two witnesses was offered which tended to show that while the trial was pending one of the jurors, during some intermission, discussed the case with persons in a store in the town of Crystal and expressed his opinion on the credence he would attach to certain testimony and withhold as to other testimony. Eventually this juror was reminded by a bystander that he should not talk about the case. Another instance of misconduct was testified to, which tended to show that during intermissions of court one of defendant's witnesses was repeatedly seen in conversation with a juror in this case, and whenever the witness to such misconduct attempted to get close enough to hear their conversation it ceased. Whether these irregular incidents would be sufficient in themselves to reverse this judgment need not be determined. It is almost superfluous to add

that if clearly established the recalcitrant jurors should be severely dealt with, and the officious witness who was repeatedly seen in private conversation with one of them should likewise be made an example of.

The foregoing disposes of the principal matters urged upon our attention. As we have shown, some of plaintiff's assignments of error have not been sustained or have been regarded as nonprejudicial. But the exclusion of the rebuttal testimony which would have established plaintiff's right of possession of the pasture, we regard as prejudicial error. And as we have seen, there were other untoward incidents in this lawsuit which may explain how it happened that plaintiff came out of it empty-handed, notwithstanding the severe and lasting injuries he sustained through the violence of defendant. We readily concede, of course, that whether that violence was justified or not is not primarily our concern; but the trial errors we have noted argue too potently that justice may have miscarried, and that a new trial should be awarded.

The judgment of the district court is reversed and the cause remanded for a new trial.