No. 38,804

VICKY LEE JOY, by Mrs. Roy G. Lewis, her duly appointed, qualified and acting Guardian, *Appellant*, v. ANNIS WHITLOW BROWN, *Appellee*.

(252 P. 2d 889)

834

 Opinion filed
January 24, 1953. 

John F. Kaster, of Cunningham, and John Fontron, of Hutchinson, were on the briefs for the appellant.

Don Shaffer and Abraham Weinlood, both of Hutchinson, were on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover damages. Defendant's demurrer to the plaintiff's petition was sustained and plaintiff appeals.

In her petition plaintiff alleged that she was a minor six years of age and that her grandmother was her duly appointed and qualified guardian; that plaintiff was the child and only heir of Joy M. Joy, an unmarried woman, who died on May 26, 1950; that no administration was had of the estate of Joy M. Joy, no administrator appointed and that the action was brought by plaintiff as next of kin of Joy M. Joy, deceased. It was further alleged that on May 26, 1950, defendant Annis Whitlow Brown wilfully and unlawfully performed an operation upon Joy M. Joy with intent and for the purpose of procuring an abortion or miscarriage, the operation then not being necessary to preserve her life and not having been advised by a physician to be necessary for that purpose; that the defendant performed the operation in a careless and negligent manner and without employing the skill reasonably required therefor, and ruptured, tore and lacerated the placenta, separating the same from its normal attachment and causing profuse and intense hemorrhage therefrom, and defendant failed to treat, prevent or stop such hemorrhage and failed to give ordinary and proper care to Joy M. Joy in the treatment of said hemorrhage and after-effects of such operation and on May 26, 1950, and within a short time after the operation, Joy M. Joy died from the effects of the operation and that the direct and proximate cause of the death of Joy M. Joy was the unlawful operation performed by the defendant in the careless, negligent and unskillful manner as alleged. The allegations as to details of damages need not be set forth. Plaintiff prayed for damages in the sum of $15,000 and costs.

Defendant demurred to the petition on the ground that the allegations did not allege facts sufficient to constitute a cause of action. The trial court sustained this demurrer and the appeal followed.

It may be observed that the petition contained allegations pertinent to an action for wrongful death as authorized by G. S. 1949, 60-3202, 3204. Those sections, in substance, provide that when the death of one is caused by the wrongful act or omission of another, the personal representatives of the former, or as here the next of kin, may maintain an action against the latter, if the former might have maintained an action had he lived, for an injury for the same act or omission. The question therefore arises whether Joy M. Joy, if she had lived, could have maintained an action against Annis Whitlow Brown.

The courts of various jurisdictions which have had occasion to rule thereon are not in agreement on the question whether recovery may be had for injury to or the death of a woman who consents to an abortion, some holding that consent to an illegal operation bars recovery, others holding that consent does not constitute a defense. See 1 C. J. S. 340 and 1 Am. Jur. 153.

The petition before us was not motioned and is entitled to a liberal construction. It is silent on the proposition of consent, but we cannot read its allegations other than that Joy M. Joy consented to the operation performed upon her, and we shall treat the sufficiency of her allegations as though consent were expressly alleged.

Appellee's argument in support of the trial court's ruling runs thus: The action is barred by reason of Joy M. Joy's consent to the abortion, an illegal act. An action which requires for its support the aid of an illegal act cannot be maintained (*Gregg v. Wyman,* 4 Cush. [Mass.] 322) that the rule would settle the case except for the so-called mutual combat cases, which rest on an erroneous and mistaken view of the historical precedent and unsound reasoning for it, promulgated by Cooley in his work on Torts, 4th Ed., § 97; that the Cooley view was demolished by the article by Francis H. Bohlen in Columbia Law Review for December, 1924, Vol. XXIV, No. 8, extensive quotation therefrom being made. Attention is also directed to Prosser on Torts, § 18, for a somewhat similar analysis; that those authorities support the thesis that the mutual combat cases are not soundly decided and ought not to be held exceptions to the rule that one party who consents to the doing of an immoral or unlawful act by another may not recover from him for any injury sustained therefrom; that the exception of mutual combat has become implanted in the majority of American jurisdictions but it has not been extended, and that prior to Bohlen's article in 1924 the ex-

ception had been carried into the field of abortions, citing cases which are noted in an annotation in 33 A. L. R. 58, but that since 1924 no jurisdiction other than those mentioned above had recognized a cause of action for damages or death resulting from an abortion to which consent had been given, citing cases all of which are mentioned in an annotation in 21 A. L. R. 2d 369, which supersedes previous annotations therein referred to. Some of the last mentioned cases are reviewed by appellee but especial attention is given to *Miller v. Bennett*, 190 Va. 162, 56 S. E. 2d 217, 21 A. L. R. 2d 364, from which extensive quotation is made. Exhaustive review will not be made of the case, reference being had to the opinion. The court took notice of the general rule that a party who consents to an immoral or illegal act cannot recover from other participants thereto for the consequences of the act, to claimed exceptions such as the mutual combat cases, to Bohlen's article previously mentioned, and held that the better reasoned cases supported the view that the administrator of the estate of a woman who died as the result of an abortion performed on her, may not recover damages from the person who performed the operation. If that case, and others of like import be followed, then appellee's contention that the trial court did not err in ruling on the demurrer must be sustained.

Appellant's contention is that under better reasoned decisions, the action is maintainable, and that being so, the trial court's ruling was erroneous. She directs our attention first to the case of *Herman v. Julian, et al.*, 117 Kan. 733, 232 Pac. 864, as our only case in which the question has been mentioned, and in which she states there is some *dicta* tending to support appellee's contention. It may here be observed that in the annotation in 21 A. L. R. 2d 369, and in some of the cases mentioned therein, the above case has been cited as holding there could be no recovery in Kansas for damages from an abortion consented to by the woman. An analysis of the case discloses that the action was for damages by a minor under the age of sixteen years against two defendants, one of whom, Turner, caused her to become pregnant and both of whom, Turner and Julian, were responsible for an abortion produced by them. Julian demurred to the petition on the ground of misjoinder of causes of action and appealed from an adverse ruling. This court said the question was not whether the petition stated a cause of action founded on the abortion, but whether it stated two causes of action, one for seduction and another for the abortion, and that if the allegations

relating to the circumstances under which the pregnancy occurred were inserted merely by way of inducement to show a relationship favorable to overcoming plaintiff's will, but one cause of action was alleged and the trial court did not err in its ruling. In the course of the opinion it was said that the abortion statute was designed for the protection of the general public interest and not for the special protection of a class, as a primary object. It was further said that the reason for civil liability for statutory rape, consented to, does not obtain and there is authority that consent to an illegal operation bars recovery, citing Bohlen's article above mentioned. It may be inferable from the above that if there had been legal consent there could have been no recovery, but there is no express statement to that effect. In any event, as shown above, right of recovery was not the issue presented and the statement must be treated as *dictum*.

Appellant also directs our attention to cases cited in 21 A. L. R. 2d 369, supporting her contention, but she stresses *Milliken v. Heddesheimer*, 110 Ohio St. 381, 144 N. E. 264, 33 A. L. R. 53. Without making a complete review of that case, it is noted, among other things, that the court directed attention to the rule that that to which a person assents is not esteemed in law to be an injury and that where it appears that the ground of complaint of the plaintiff has been induced by that to which he has assented, he cannot recover, it is otherwise when the public peace or the life or person of a citizen is involved, and after making reference to 1 Cooley, Torts, 3d Ed. 282, treating of mutual combat, stated that one may not lawfully consent to the taking of his own life by another and so one may not in such case plead a previous arrangement and voluntary exposure to death by agreement, for the life of an individual is guarded in the interest of the state and, not his life only, but his person as well. It is said in the opinion:

"If, then, consent will not avail as a defense in any civil suit for damages for personal injury, certainly no argument is required to demonstrate that an act which is designed to take the life of one, and necessarily endanger the life of another, and is violative not only of good morals but of the criminal laws of the state, is not one from the consequences of which he who commits the act may be relieved by reason of the previous consent of the person injured.

. . . . . . . . . . .

"It is our opinion, therefore, that even assuming that the inference may rationally and properly be drawn from the averments of the petition that the deceased acquiesced in, or even consented to, the criminal act complained of, the petition is good as against a demurrer, for which reason the motion for

judgment for the defendant on the pleadings should have been overruled." (1. c. 390.)

and it was held:

"An action to recover damages from one who performed an illegal operation to produce an abortion may be maintained by the administrator of the woman whose death resulted from such wrongful act, even though she consented thereto." (Syl.· ¶ 2.)

In view of appellee's statement that since the publication of the Bohlen article in 1924, no court had recognized a cause of action for damages resulting from abortion, we note briefly that in 1928 the appellate court of Indiana in *Martin v. Hardesty,* 91 Ind. App. 239, 163 N. E. 610, after calling attention to the rule that at common law consent to a tort was a complete shield against civil liability, and that there was an exception in case of a battery, stated the reason for the exception was that, because of the state's interest, neither party had the right to agree to a breach of the public peace or to make any agreement to sacrifice his life or suffer any injury to his person and that such an agreement was void, and it was held that consent of a woman to the performance of an unlawful operation to produce an abortion which resulted in her death, did not bar her personal representative from prosecuting an action for damages against one who performed the operation.

We take brief note of our crimes act. The willful killing of "any unborn quick child" by an injury to the mother which would be murder if it resulted in the death of the mother, is manslaughter in the first degree (G. S. 1949, 21-409). Every person who shall use or employ any instrument or other means on any woman pregnant with "a quick child" with intent to destroy such child, unless the same shall have been necessary to preserve the life of the mother, or shall have been advised by a physician to be necessary for that purpose shall, if the death of the child or mother result from the means employed, be guilty of manslaughter in the second degree (G. S. 1949, 21-410). Every person who shall administer to any pregnant woman any medicine, drug or substance, or use or employ any instrument or means whatsoever with intent to procure abortion or miscarriage, unless necessary to preserve the life of the woman or advised by a physician, for that purpose, shall be adjudged guilty of a misdemeanor (G. S. 1949, 21-437). On their face, the above statutes do not condemn the woman nor does any other statute make her an accomplice. She has no criminal liability

unless it be as an accessory under G. S. 1949, 21-105 or 21-106, which we need not here determine. It need not be elaborated that the above statutes are for the purpose of protecting the life not only of the unborn child, but that of the mother, and that the state has a vital interest therein.

This court has recognized and followed the rule that damages resulting from injuries received in a mutual combat may be recovered and if the conduct of the parties to a mutual combat constitutes a breach of the peace, the consent of either one to participate does not deprive him of his civil remedy against the other (*McNeil v. Mullin*, 70 Kan. 634, 79 Pac. 168). In that opinion, to which reference is made, quotation was made from Cooley on Torts, dealing with the question, and citation of other authority was made. One of the closing sentences is:

"His consent to fight must be treated as utterly void, and each party must be left to suffer all consequences, civil and criminal, of his reprehensible conduct." (1. c. 640.)

The last mentioned case was followed in *McCulloch v. Goodrich*, 105 Kan. 1, 181 Pac. 556, 6 A. L. R. 386. Notwithstanding criticism of the soundness of the rule, as heretofore indicated, and that some courts may have discarded it (see e. g. comment in *Wood v. McKeever*, 141 Kan. 323, 325, 41 P. 2d 989), we are not now called upon to hold that in a mutual combat case, and this is not one, that it should not be followed. The mutual combat cases do not determine the question presently before us, and are to be considered only as analogous. One analogy to be drawn is that if the consent of a participant in a mutual combat case, usually at least only a misdemeanor, is utterly void, then there could be no lawful and valid consent to a felonious act to produce an abortion the very purpose of which is to destroy one life and likely, as in the case before us, to destroy two lives.

Careful consideration has been given the two lines of authority above mentioned and the reasoning in support of each, as well as to the statutes denouncing the crime of abortion. We recognize the force and effect of the rule that a party who consents to an illegal or immoral act may not be allowed to recover from other participants to the act for the consequences and adhere thereto. But it is implicit in the rule that the consent given must be a lawful and valid one. We are of the opinion that no person may lawfully and validly consent to any act the very purpose of which is

to destroy human life. We shall not dwell on the thought that such consent as was given preceded any act of the appellee to perform the illegal operation, and at most was no consent to the doing of the act in the manner alleged in the petition. We have no hesitancy in holding that had Joy M. Joy survived she could have maintained an action for any damage she may have sustained, and that a result fatal to her having occurred, her next of kin may maintain an action for her wrongful death.

The ruling of the trial court sustaining the appellee's demurrer to the appellant's petition is reversed and the cause remanded for further proceedings.

WEDELL, J. (concurring specially): I concur in the result.

"The abortion statute is designed for the protection of the general public interest, and not for the special protection of a class, as primary object." (*Herman v. Julian et al.,* 117 Kan. 733, 734, 232 Pac. 864.)

Assuming the foregoing quotation from the opinion in the Herman case, *supra,* is *dictum* it is founded on sound doctrine and is supported by ample authority. The abortion statute being criminal in character the state may redress the wrong to society by criminal proceedings against the person who performs the illegal act. This, however, does not mean that a woman on whom an operation is performed, or her heir, is, therefore, without redress.

This is a civil action to recover damages. From the mere fact the operation was illegal, and irrespective of whether the deceased could have given a valid consent thereto, it does not follow the illegal act itself constituted the proximate cause of the damage sustained. Nor is the instant action based on such a theory. The petition alleges:

". . . the direct and proximate cause of death of Joy M. Joy was the said unlawful, criminal operation *performed by the defendant in the grossly careless, negligent and unskillful manner as hereinbefore alleged."* (Italics inserted.)

The burden, of course rests on plaintiff to prove the negligence she alleges as constituting the proximate cause of the wrongful death.

Irrespective of whether the deceased woman's consent to the illegal operation was valid she did not consent to the negligent performance thereof. For that negligence which was the proximate cause of death defendant remains liable in a civil action for damages.

PARKER, J., concurs in the result.

Price, J. (dissenting): I dissent. The deceased, having consented to and participated in the illegal and unlawful act, could not have recovered damages for the consequences of such act, even though negligently performed, had she lived. That being the case, no recovery may be had under the wrongful death statute. I think the demurrer was properly sustained.